[Cite as *State v. Petway*, 2020-Ohio-3848.]

IN THE COURT OF APPEALS

ELEVENTH APPELLATE DISTRICT

LAKE COUNTY, OHIO

| | | |
|---|---|---|
| STATE OF OHIO, | : | **O P I N I O N** |
| Plaintiff-Appellee, | : | |
| - vs - | : | **CASE NO. 2019-L-124** |
| DERRICK J. PETWAY, | : | |
| Defendant-Appellant. | : | |

Criminal Appeal from the Willoughby Municipal Court, Case No 19 CRB 01616.

Judgment: Affirmed.

*Richard J. Perez,* City of Willoughby Prosecutor, and *Leslie S. Johns,* 4230 State Route 306, Suite 240, Willoughby, Ohio 44094 (For Plaintiff-Appellee).

*Andrew Schriver,* Schriver Law, Ltd., 2711 W. 14th Street, #32, Cleveland, Ohio 44113 (For Defendant-Appellant).

MARY JANE TRAPP, J.

{¶1} Appellant, Derrick Petway ("Mr. Petway"), appeals the judgment of conviction and sentence from the Willoughby Municipal Court following a jury trial in which he was found guilty of assault, a misdemeanor of the first degree, in violation of R.C. 2903.13(A).

{¶2} Mr. Petway argues that the trial court committed prejudicial error in denying his request for a jury instruction on self-defense. The issue on appeal is whether a video

recording presented at trial that depicts Mr. Petway's alleged assault "tends to support" that he used the force in self-defense under the amended version of R.C. 2901.05(B)(1).

{¶3} After a careful review of the record and pertinent law, we find that the video recording does not "tend to support" that Mr. Petway used the force in self-defense. The video demonstrates that Mr. Petway was at fault in creating the situation giving rise to the physical altercation. Accordingly, we find that the trial court did not abuse its discretion in denying Mr. Petway's request to instruct the jury on self-defense.

{¶4} Thus, we affirm the judgment of the Willoughby Municipal Court.

## Substantive and Procedural History

{¶5} This matter involves a physical altercation between Mr. Petway and Seronne Morris ("Ms. Morris") that occurred on June 9, 2019 in the parking lot of Signature Health located in Willoughby, Ohio.

### *The Alleged Assault*

{¶6} On the date of the alleged assault, Ms. Morris had been working for ten hours at her job of installing siding. A friend dropped her off at Signature Health, where her fiancé, Jennifer Keller ("Ms. Keller"), had an appointment. Ms. Morris and Ms. Keller met in the lobby, left the facility, and walked to their shared vehicle located in the parking lot. A video camera was recording the parking lot area.

{¶7} Ms. Morris sat in the passenger seat of the vehicle to rest, keeping her door open because the motorized window did not operate. Another vehicle was parked adjacent to her open door. Ms. Keller was standing outside the front of the vehicle on the driver's side while texting on her cell phone.

{¶8} The video recording, which does not contain audio, shows Mr. Petway enter the parking lot and walk toward the passenger side of Ms. Morris's vehicle. He closes the

2

passenger door slightly to walk around it and stands in close proximity to where Ms. Morris is seated. Mr. Petway appears to confront Ms. Morris, wave his arms, and reach inside the vehicle.

{¶9} Ms. Morris testified that Mr. Petway began loudly screaming "Where the f*** is my money, bitch?" According to Ms. Morris, Mr. Petway had previously given her $30 to purchase a Roku or Fire Stick device for him. Because of her work schedule and procrastination, she did not obtain the device and eventually forgot about the money. Both Gregory Bort ("Mr. Bort"), a cab driver who witnessed the incident, and Ms. Keller testified that Mr. Petway was angrily demanding money from Ms. Morris.

{¶10} Ms. Morris also testified that Mr. Petway bent into her car, forcefully touching her shoulder and leg. Ms. Keller testified that Ms. Morris requested several times that Mr. Petway remove himself from her space.

{¶11} The video shows Ms. Morris exit her vehicle and shove Mr. Petway. Ms. Morris testified that she did so to get him out of the way and told him to calm down.

{¶12} After exiting, Ms. Morris was surrounded by her vehicle on her right side, the adjacent vehicle on her left side, the open passenger door behind her, and Mr. Petway standing directly in front of her. Ms. Morris testified that there was no escaping the situation because she was blocked in by her own door.

{¶13} The argument escalated into a physical altercation, with both parties attempting blows. According to Ms. Morris, Mr. Petway kept his body against hers, pushing her with his hands, until the shoving became a "swinging match."

{¶14} The video shows Mr. Petway strike Ms. Morris in the face, causing her to hit her vehicle and fall to the ground. Ms. Morris testified that she lost consciousness and hit her face and shoulder on the vehicle before hitting the ground.

3

{¶15} The video also shows Mr. Petway standing over Ms. Morris and continuing to strike at her while she is lying on her back on the ground and kicking at him. Ms. Morris testified that she regained consciousness while lying on her back and discovered Mr. Petway on top of her, attempting to attack her, so she tried to kick him. Ms. Morris gets up, grabs Mr. Petway, and throws him to the ground.

{¶16} Ms. Morris testified that she kicked his glasses and picked up her own glasses, both of which had been lying on the ground.

{¶17} Ms. Morris walked around the vicinity for a few minutes and eventually entered the Signature Health facility. A video camera was also recording the lobby of Signature Health.

{¶18} The police arrived shortly thereafter. Officer Jackson Hyams ("Officer Hyams"), a police officer with the city of Willoughby, interviewed the parties and witnesses and took photographs. He examined Mr. Petway for injuries and did not observe any. He observed injuries on Ms. Morris, consisting of a laceration on her right cheek and the right side of her back and redness and swelling on her left cheek.

{¶19} Officer Hyams arrested Mr. Petway and transported him to the police station. According to Officer Hyams, Mr. Petway remarked, "I struck the bitch once."

{¶20} Ms. Morris was taken to the hospital by ambulance. She testified that she received a CAT scan and an x-ray and had sustained a concussion.

{¶21} In June 2019, a complaint was filed in the Willoughby Municipal Court charging Mr. Petway with assault, a misdemeanor of the first degree, in violation of R.C. 2903.13(A). Mr. Petway pleaded not guilty. In August 2019, the matter proceeded to a jury trial.

4

***The State's Case***

{¶22}   At trial, the state presented testimony from Mr. Bort, Ms. Keller, Ms. Morris, and Officer Hyams.  Mr. Petway's trial counsel waived cross-examination of Ms. Morris.

{¶23}   The state also presented the video recordings of the parties' altercation and of Ms. Morris inside the lobby of the facility following the incident and photographs of Ms. Morris taken shortly after the incident.

***Jury Instructions***

{¶24}   After the state rested, the defense requested a jury instruction on self-defense based on the video recording of the incident.  After hearing argument from trial counsel and re-watching the video recording, the trial court determined that the evidence did not warrant a jury instruction on self-defense.

{¶25}   The trial court presented the parties with copies of the jury instructions, and Mr. Petway's trial counsel objected to the absence of a self-defense instruction.  The trial court stated as follows:

{¶26}   "Well, as I stated in my earlier ruling, based on the plain language of the statute as amended on March 28, 2019, the statute requires the court to make – to make a preliminary evidentiary ruling as to whether evidence that has been presented at trial has – tends to – I'm quoting, tends to support that the accused person used force in self-defense.  There have been – there has not been any testimony via live witnesses that would support that.  All that is at issue and for the Court to make that determination is a video.  I have viewed the video of the parking lot and I do not see any evidence that tends to support the position of self-defense.  So absent any other evidence present from any witness, from any party – I also want to point out that the self-defense argument, if that was going to be raised, it was not brought out through any cross-examination of any of

5

the State's witnesses, so there is nothing else before the Court to consider in terms of whether or not the evidence tends to support this instruction.

{¶27} "So based on those reasons, I do find that no evidence has been presented to support that contention. So the objection is noted. It's preserved for the record, and we will move on."

### *Jury Question*

{¶28} During its deliberations, the jury presented a written question to the trial court that stated, "Is it necessary to determine who threw the first punch or is the incident 'as a whole' as to whether an assault occurred under the eyes of the law." After conferring with counsel, the trial court issued a written response that stated, "You have received all the evidence in this case. The Court has provided you with the applicable law. Please continue with your deliberations."

### *Verdict and Sentencing*

{¶29} The jury subsequently returned a verdict of guilty. The matter was deferred for the preparation of a presentence report and a victim impact statement. The trial court issued a judgment entry memorializing the guilty verdict and scheduling the matter for sentencing.

{¶30} At the sentencing hearing, the trial court ordered Mr. Petway to pay a fine of $100 and court costs and imposed 180 days in jail with 110 days suspended, for a total of 70 days in jail, with credit for 16 days already served.

{¶31} The trial court filed a judgment entry regarding Mr. Petway's sentence, which consisted of a preprinted form with handwritten notations. Mr. Petway filed a notice of appeal with this court in *State v. Petway*, 11th Dist. Lake No. 2019-L-090.

{¶32} This court issued an order for the parties to show cause why the appeal should not be dismissed for lack of a final appealable order. Mr. Petway subsequently filed a motion to dismiss his appeal, which this court granted.

{¶33} The trial court issued a "judgment entry of sentence (nunc pro tunc)" that memorialized Mr. Petway's conviction and sentence. Mr. Petway filed a timely notice of appeal of this entry and presents the following sole assignment of error for our review:

{¶34} "The trial court committed prejudicial error in denying Petway's request for a jury instruction on self-defense based on its opinion that Petway had not shown sufficient evidence of self-defense, in spite of the amended R.C. 2901.05 significantly lowering the threshold for such evidence."

**Standard of Review**

{¶35} In his sole assignment of error, Mr. Petway contends that the trial court erred by denying his request for a jury instruction on self-defense.

{¶36} An appellate court reviews a trial court's refusal to give a requested jury instruction for an abuse of discretion. *State v. Adams*, 144 Ohio St.3d 429, 2015-Ohio-3954, ¶240. An abuse of discretion is the trial court's "failure to exercise sound, reasonable, and legal decision-making." *State v. Beechler*, 2d Dist. Clark No. 09-CA-54, 2010-Ohio-1900, ¶62, quoting *Black's Law Dictionary* 11 (8th Ed.Rev.2004).

{¶37} When an appellate court is reviewing a pure issue of law, the mere fact that the reviewing court would decide the issue differently is enough to find error (although harmless errors and errors not preserved for appellate review are not reversible). *Id.* at ¶67, fn. 2. By contrast, where the issue on review has been confided to the discretion of the trial court, the mere fact that the reviewing court would have reached a different result is not enough, without more, to find error. *Id.* at ¶67.

7

{¶38} This court has held that whether sufficient evidence has been presented to raise an affirmative defense of self-defense is a question of law. *State v. Sullivan*, 11th Dist. Lake Nos. 2019-L-143 & 2019-L-144, 2020-Ohio-1439, ¶33.

### Legal Standards

{¶39} We first set forth the applicable legal standards that govern when a trial court is required to instruct the jury on self-defense.

### *Jury Instructions*

{¶40} After arguments are completed, a trial court must fully and completely give the jury all instructions which are relevant and necessary for the jury to weigh the evidence and discharge its duty as the fact finder. *State v. Comen*, 50 Ohio St.3d 206 (1990), paragraph two of the syllabus (construing Crim.R. 30(A)). Requested jury instructions should ordinarily be given if they are correct statements of law, if they are applicable to the facts in the case, and if reasonable minds might reach the conclusion sought by the requested instruction. *Adams* at ¶240. The court may refuse to give an instruction as to a matter which is not applicable to the facts governing the case. *State v. Scott*, 26 Ohio St.3d 92, 101 (1986).

### *Self-Defense*

{¶41} The elements of a valid claim of self-defense are as follows: (1) the defendant was not at fault in creating the situation giving rise to the affray; (2) the defendant had a bona fide belief that he or she was in imminent danger of death or great bodily harm and that his or her only means of escape from such danger was in the use of such force; and (3) the defendant did not violate any duty to retreat or avoid the danger. *State v. Barnes*, 94 Ohio St.3d 21, 24 (2002), citing *State v. Robbins*, 58 Ohio St.2d 74

8

(1979), paragraph two of the syllabus; *State v. Mogul*, 11th Dist. Trumbull Nos. 97-T-0018 & 97-T-0067, 1998 WL 258164, *3 (May 15, 1998).

{¶42} The degree of force permitted depends upon what is reasonably necessary to protect that individual from the imminent use of unlawful force. *Mogul* at *4, citing *Akron v. Dokes*, 31 Ohio App.3d 24, 25 (9th Dist.1986). In other words, one may use a commensurate amount of force as the circumstances require to protect oneself against an attack. *Id*.

{¶43} In cases involving the use of nondeadly force, like the present case, there is no requirement that a person retreat to avoid the danger, even if such retreat is possible. *Id*., citing *State v. Perez*, 72 Ohio App.3d 468, 472 (10th Dist.1991), and *Columbus v. Dawson*, 33 Ohio App.3d 141, 142 (10th Dist.1986). Since there is no duty to retreat in a case involving nondeadly force, the two remaining elements of a valid self-defense claim must be satisfied, to wit: the defendant was not at fault in creating the situation, and the defendant had a genuine belief that he was in imminent danger of bodily harm. *Id*.

{¶44} Further, the elements of self-defense are cumulative, meaning that all of the elements must be present to establish to self-defense. *See State v. Jackson*, 22 Ohio St.3d 281, 284 (1986).

### *Affirmative Defenses*

{¶45} Self-defense is an affirmative defense. *State v. Poole*, 33 Ohio St.2d 18, 19 (1973); R.C. 2901.05(B)(1). Affirmative defenses are "certain justification(s) for admitted conduct allowed to a defendant in a criminal case, provable for the most part under the plea of not guilty." (Citations omitted.) *Poole* at 19. "[T]hey represent not a mere denial or contradiction of evidence which the prosecution has offered as proof of an

9

essential element of the crime charged, but, rather, they represent a substantive or independent matter which the defendant claims exempts him from liability even if it is conceded that the facts claimed by the prosecution are true." (Citations omitted.) *Id.*

{¶46} The elements of the crime and the existence of self-defense are separate issues. *State v. Martin*, 21 Ohio St.3d 91, 94 (1986), *aff'd*, 480 U.S. 228 (1987). Self-defense seeks to relieve the defendant from culpability rather than to negate an element of the offense charged. *Id.*

### Burden of Proof

{¶47} Establishing an affirmative defense requires meeting the applicable burden of proof. As this court has previously explained, the burden of proof encompasses two different concepts: the burden of production and the burden of persuasion. *Mogul* at *4, citing *State v. Robinson*, 47 Ohio St.2d 103, 107 (1976). The burden of production requires a party come forward with or to produce sufficient evidence to make out a prima facie case. *Id.* The burden of persuasion is the requirement that a party must convince the trier of fact that a given assertion is supported by the quantum of evidence required under law. *Id.*, citing *Robinson* at 107.

{¶48} In Ohio, the burden of production for self-defense has consistently belonged to the defendant. *See Robinson* at 109. However, the burden of persuasion on self-defense has shifted back and forth over the years. *See id.* at 109-10.

{¶49} Most recently, the defendant had the burden of proving self-defense by a preponderance of the evidence. *See Mogul* at *4. If the defendant failed to meet the burden of producing sufficient evidence of self-defense during the course of the trial, then the jury would not be instructed on the issue. *Id.* Under such a scenario, the jury would also never be presented with the question of whether the defendant has proven every

10

element of self-defense by a preponderance of the evidence (i.e., the burden of persuasion). *Id.*

### Burden of Production for Self-Defense

{¶50} The prior version of R.C. 2901.05(A) provided that "[t]he burden of going forward with the evidence of an affirmative defense * * * is upon the accused." In construing the phrase "burden of going forward with the evidence, the Supreme Court of Ohio held that "in order for the defendant to successfully raise an affirmative defense, 'evidence of a nature and quality sufficient to raise the issue must be introduced, from whatever source the evidence may come.'" *State v. Melchior*, 56 Ohio St.2d 15, 20 (1978), quoting *Robinson* at 111-12. According to the court "[e]vidence is sufficient where a reasonable doubt of guilt has arisen based upon a claim of self-defense. * * * If the evidence generates only a mere speculation or possible doubt, such evidence is insufficient to raise the affirmative defense, and submission of the issue to the jury will be unwarranted." *Id.*

{¶51} Thus, the court held that "[t]he proper standard for determining in a criminal case whether a defendant has successfully raised an affirmative defense under R.C. 2901.05 is to inquire whether the defendant has introduced sufficient evidence which, if believed, would raise a question in the minds of reasonable [jurors] concerning the existence of such issue." *Id.* at paragraph one of the syllabus. The court has also held that a trial court must view the evidence in the light most favorable to the defendant. *Robinson* at 112.

{¶52} Since the elements of self-defense are cumulative, the defendant's failure to show legally sufficient evidence raising an issue on either element warranted the refusal of a self-defense instruction. *Henderickson v. Warden Lebanon Correctional Inst.*,

11

S.D.Ohio No. 2:10-CV-1084, 2011 WL 5282677, *10 (Nov. 2, 2011), citing *Jackson*, *supra*, at 284.

{¶53} On March 28, 2019, before the date of Mr. Petway's alleged offense in June 2019, the amended version of R.C. 2901.05(B)(1) became effective, which states as follows:

{¶54} "A person is allowed to act in self-defense, defense of another, or defense of that person's residence. If, at the trial of a person who is accused of an offense that involved the person's use of force against another, *there is evidence presented that tends to support that the accused person used the force in self-defense,* defense of another, or defense of that person's residence, the prosecution must prove beyond a reasonable doubt that the accused person did not use the force in self-defense, defense of another, or defense of that person's residence, as the case may be." (Emphasis added.)

{¶55} Under the amended statute, the defendant retains the burden of production, which is the burden of producing evidence "that tends to support" that the defendant used the force in self-defense. The burden of persuasion has been shifted to the prosecution to disprove at least one of the elements of self-defense beyond a reasonable doubt. *State v. Carney*, 10th Dist. Franklin No. 19AP-402, 2020-Ohio-2691, ¶31.

### *"Tends to Support"*

{¶56} The issue in this case is whether the video recording of the incident presented at trial "tends to support" that Mr. Petway used the force in self-defense, requiring the trial court to instruct the jury on self-defense.

{¶57} The amended statute does not define the phrase "tends to support." Both parties suggest that the amended statute lowers a defendant's burden of production on self-defense.

{¶58} Mr. Petway asserts that the prior case law indicates that trial courts "should generally err on the side of the defendant if there is a question as to the sufficiency or quality of the evidence" and that "[t]here is nothing to suggest that the legislature sought to make the question of sufficiency less favorable to the defendant * * *." The state asserts that although "the defendant's burden may have been lowered, * * * the statute still requires *some* evidence." (Emphasis sic.)

{¶59} At the present time, the Fourth District Court of Appeals is the only Ohio appellate court that has had an opportunity to interpret the phrase as used in the amended statute. *See State v. Tolle*, 4th Dist. Adams No. 19CA1095, 2020-Ohio-935, *appeal not accepted*, 159 Ohio St.3d 1437, 2020-Ohio-3634.

{¶60} In *Tolle*, the Fourth District concluded that "[p]laced in context, the phrase 'tends to support' does not connote that a new standard should apply to the determination of whether a defendant is entitled to a self-defense instruction." *Id.* at ¶24. It held that in order for evidence to "tend to support" an affirmative defense of self-defense under R.C. 2901.05(B)(1), it must be sufficient to raise a question in the mind of a reasonable juror of the existence of the issue of self-defense pursuant to the existing standard that the Supreme Court of Ohio set forth in *Melchior*. *Id.*

{¶61} However, at least one commentator has suggested that the evidentiary standard is lower under the amended statute. *See* Katz, Martin & Macke, *Baldwin's Ohio Practice Criminal Law*, Section 88:12 (3d Ed.Nov.2019) (The amended statute "describes the modicum of evidence necessary to trigger a self-defense instruction * * *. This 'tends

to support' language suggests that the amount of evidence necessary to trigger a self-defense instruction is less than the test under *State v. Rogers*").[1]

### *"Tends to Support" Construed*

{¶62} In construing the phrase "tends to support" as used in the amended statute, we note that R.C. 1.42 requires that "[w]ords and phrases shall be read in context and construed according to the rules of grammar and common usage. Words and phrases that have acquired a technical or particular meaning, whether by legislative definition or otherwise, shall be construed accordingly."

{¶63} The word "tend" is a legal term of art. For instance, the Supreme Court of Ohio has used the phrase "tends to support" in other evidentiary contexts. *See, e.g., State v. Kuchmak*, 159 Ohio St. 363, 367 (1953) (holding that a trial court "may not charge upon, and a defendant may not be found guilty of, a lesser offense, unless the evidence *tends to support* each of the necessary elements of such offense"); *State v. Economo*, 76 Ohio St.3d 56 (1996), syllabus (holding that "[s]light circumstances or evidence which *tends to support* the victim's testimony" constitutes sufficient corroborating evidence required under R.C. 2907.06(B) to establish sexual imposition); *State v. Maranda*, 94 Ohio St. 364 (1916), syllabus ("[T]here must be some evidence outside of a confession, *tending to establish* the corpus delicti, before such confession is admissible"); *Kent v. State*, 42 Ohio St. 426, 431 (1884) ("[W]here a party cross-examining a witness, desires to call a witness to contradict him, the right to do so will, in general, be determined by the

---

1. In *State v. Rogers*, 43 Ohio St.2d 28 (1975), the Supreme Court of Ohio determined that self-defense did not apply in the case because the record was "devoid of evidence that appellant, out of concern for his safety, intended to shoot the decedent * * * , or that the decedent committed an overt act by which appellant could reasonably, and in good faith, believe that he was in imminent danger of death or great bodily harm * * *." *Id.* at 30-31. We note that *Rogers* was decided prior to the court's delineation of the sufficiency standard in *Robinson* and *Melchior*.

14

answer to the question, whether the matter offered in contradiction is in any way relevant to the issue, or such as *tends to show* prejudice or interest, with respect to the cause or the parties, on the part of the witness sought to be contradicted").  (Emphasis added throughout.)

{¶64} The legislature has used similar phrases in other sections of the Ohio Revised Code relating to evidence.  *See, e.g.*, R.C. 2111.141 ("In order to verify the accuracy of an inventory, the court may order a guardian to provide any additional evidence that *may tend to prove*" possession of or knowledge of other assets); R.C. 2151.44 (the juvenile judge may order a complaint filed "[i]f it appears at the hearing * * * that any person has * * * acted in a way *tending to cause* delinquency in such child"); R.C. 2333.15 ("[N]o person [subject to proceedings in aid of execution] shall be excused from answering any question on the ground that his examination *will tend to convict* him of a fraud"); R.C. 2941.148(B) ("In determining for purposes of this section whether a person is a sexual violent predator," all statutory factors "that apply regarding the person may be considered as *evidence tending to indicat*e that it is likely that the person will engage in the future in one or more sexual violence offenses"); R.C. 2945.59 ("[A]ny acts of the defendant which *tend to show* his motive or intent, the absence of mistake or accident on his part, or the defendant's scheme, plan, or system in doing the act in question may be proved, whether they are contemporaneous with or prior or subsequent thereto, notwithstanding that such proof *may* show or *tend to show* the commission of another crime by the defendant"); R.C. 5715.01(A)(1) ("[A]ny other factor that *tends to prove* [real property's] true value shall be used").  (Emphasis added throughout.)

{¶65} Further, similar phrases also appear in the rules of evidence and the rules of criminal procedure.  *See, e.g.*, Evid.R. 401 ("'Relevant evidence' means *evidence*

15

*having any tendency* to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence); Evid.R. 609(F) ("If the witness denies that he or she is the person to whom the public record refers, the court may permit the introduction of additional *evidence tending to establish* that the witness is or is not the person to whom the public record refers"); Evid.R. 804(B)(3) ("A statement *tending to* expose the declarant to criminal liability, whether offered to exculpate or inculpate the accused, is not admissible unless corroborating circumstances clearly indicate the truthworthiness of the statement"); Crim.R. 16(H)(3) (A defendant's reciprocal duty of disclosure includes "[a]ny evidence that *tends to negate* the guilt of the defendant, * * * or *tends to support* an alibi," but does not include "information that would *tend to incriminate* that defendant"). (Emphasis added throughout.)

**{¶66}** The above authorities use the word "tend" consistently with one of its definitions in *Black's Law Dictionary*, which is "[t]o serve, contribute, or conduce in some degree or way; to have a more or less direct bearing or effect." TEND, *Black's Law Dictionary* (11th Ed.2019).

**{¶67}** Notably, the amended statute does not use the phrase "some evidence." In the context of whether a trial court was required to give a jury instruction for a lesser included offense, the Supreme Court of Ohio has held that "it is the quality of the evidence offered * * * that determines whether a lesser-included-offense charge should be given to a jury." *State v. Wine*, 140 Ohio St.3d 409, 2014-Ohio-3948, ¶26. "To require an instruction to be given to the jury every time 'some evidence,' however minute, is presented going to a lesser included (or inferior-degree) offense would mean that no trial

16

judge could ever refuse to give an instruction on a lesser included (or inferior-degree) offense." *State v. Shane*, 63 Ohio St.3d 630, 633 (1992).

{¶68} Thus, the amended statute's use of the phrase "tends to support" rather than "some evidence" supports a conclusion that this evidentiary standard includes a qualitative component.

{¶69} Despite the use of quite different language, the "tends to support" standard under the amended statute is not substantively different than the Supreme Court of Ohio's standard in *Melchior*.

{¶70} In *Melchior*, the court articulated the defendant's burden of production in the context of the presumption of innocence recognized in R.C. 2901.05(A) that "[e]very person accused of an offense is presumed innocent until proven guilty beyond a reasonable doubt." *See id*. at 20, citing R.C. 2901.05(A). At the time *Melchior* was decided, the prosecution had the burden of disproving self-defense if the defendant came forward with sufficient evidence to raise it. *See Robinson* at 108-09. Thus, the court stated that for the defendant to meet his or her burden of production, there must be evidence presented that was sufficient to raise a reasonable doubt of guilt based on a claim of self-defense. *See Melchior* at 20. As rephrased by the court in its syllabus, there must be "sufficient evidence, which if believed, would raise a question in the minds of reasonable [jurors] concerning the existence of [self-defense]." *Id*. at syllabus.

{¶71} The prior version of R.C.2901.05(A) imposed the burden of persuasion on the defendant to prove self-defense by a preponderance of the evidence. Of course, this did not relieve the prosecution of its burden of persuasion to prove guilt beyond a reasonable doubt. Thus, the state of law at this time created the possibility of confusion

17

for a jury seeking to reconcile the parties' respective burdens. *See State v. Millett*, 273 A.2d 504, 506 (Me.1971) (cited by the Supreme Court of Ohio in *Melchior*).

{¶72} The amended statute essentially returns Ohio law to the state in which it existed when *Melchior* was decided. Although the language of the amended statute is more direct than in *Melchior*, the logic is the same. For the defendant to meet his or her burden of production, evidence must be presented that "tends to support that the accused person used the force in self-defense." R.C. 2901.05(B)(1). The prosecution must now disprove at least one of the elements of self-defense beyond a reasonable doubt. *Id*. Otherwise, the prosecution has not overcome the presumption of innocence by proving the defendant's guilt beyond a reasonable doubt.

{¶73} Thus, the standards set forth by the Supreme Court of Ohio in *Melchior* and by the legislature in the amended statute are equivalent.

{¶74} Based on the language of the amended statute and the above authorities, we conclude that in order for the video recording to "tend to support" that Mr. Petway used the force in self-defense pursuant to R.C. 2901.05(B)(1), it must "serve, contribute, or conduce in some degree or way" to support that he used the force in self-defense, i.e., that he (1) was not at fault in creating the situation giving rise to the affray; and (2) had a bona fide belief that he was in imminent danger of death or great bodily harm and that his only means of escape from such danger was in the use of such force.

**Analysis**

{¶75} In reviewing the video recording of the incident by itself and in a light most favorable to Mr. Petway, we conclude as a matter of law that it does not "tend to support" that Mr. Petway was not at fault in creating the situation that gave rise to his physical

18

altercation with Ms. Morris. To the contrary, the video demonstrates that Mr. Petway was at fault for creating the situation.

{¶76} Ohio courts have long recognized that a person cannot provoke assault or voluntarily enter an encounter and then claim a right of self-defense. *See, e.g., State v. Nichols*, 4th Dist. Scioto No. 01CA2775, 2002 WL 126973, *3 (Jan. 22, 2002) (the defendant sought out the victim to provoke an altercation); *State v. Vines*, 8th Dist. Cuyahoga No. 33871, 1975 WL 182770, *3 (May 29, 1975) (the defendant provoked the victim to retaliate); *State v. Sekic*, 8th Dist. Cuyahoga No. 95633, 2011-Ohio-3978, ¶15 (the defendant "willingly advanced toward a volatile situation" by confronting the victim at home following an earlier incident); *State v. Amey*, 8th Dist. Cuyahoga No. 105847, 2018-Ohio-4207, ¶27 (the defendant voluntarily confronted the victim); *State v. Smith*, 4th Dist. Washington No. 02CA75, 2003-Ohio-1712, ¶11 (the defendant physically confronted the victim in a public roadway).

{¶77} Here, Mr. Petway initiated the encounter by angrily confronting Ms. Morris at close proximity while she was sitting in her vehicle. He then apparently reached inside the vehicle. After Ms. Morris exited the vehicle and shoved him, Mr. Petway stood directly in front of her, again in close proximity, so that she was boxed in by the vehicles and had no ability to escape the situation.

{¶78} Mr. Petway argues that the jury's question to the trial court during deliberations asking "if it mattered which party began the physical alter[c]ation * * * suggests that the jurors concluded [Mr.] Petway was not the original aggressor, or at least that there was some question on the subject."

{¶79} However, the jury's question actually stated: "Is it necessary to determine *who threw the first punch* or is the incident 'as a whole' as to whether an assault occurred

19

under the eyes of the law." (Emphasis added.) Thus, contrary to Mr. Petway's assertions, the jury did not ask about who "began" the physical altercation or who acted as the "original aggressor."

{¶80} As the Fourth District aptly explained in *Nichols*, "the first element of a self-defense claim does not require in all situations that the actor must have refrained from throwing the first punch. Rather, this element provides that the actor must not be at fault in creating the situation that gave rise to the affray. This concept is broader than simply not being the immediate aggressor." *Id.* at *4; *see State v. Gaston*, 8th Dist. Cuyahoga No. 98904, 2013-Ohio-2331, ¶17 (finding that the defendant was at fault for creating the situation even if he did not throw the first punch).

{¶81} Even if Ms. Morris "threw the first punch," it occurred after Mr. Petway angrily confronted and cornered her. Thus, it does not create conflicting evidence as to whether Mr. Petway was at fault for creating the situation.

{¶82} Based on the foregoing, the trial court did not abuse its discretion in denying Mr. Petway's request for a jury instruction on self-defense.

{¶83} Mr. Petway's sole assignment of error is without merit.

{¶84} The judgment of the Willoughby Municipal Court is affirmed.


TIMOTHY P. CANNON, P.J.,

MATT LYNCH, J.,

concur.