[Cite as *State v. Williams*, 2020-Ohio-5245.]

# IN THE COURT OF APPEALS
# FIRST APPELLATE DISTRICT OF OHIO
# HAMILTON COUNTY, OHIO

| | | |
|---|---|---|
| STATE OF OHIO, | : | APPEAL NO. C-190380 |
| | | TRIAL NO. C-19CRB-10842 |
| Plaintiff-Appellee, | : | |
| | : | *O P I N I O N.* |
| vs. | : | |
| | : | |
| DONALD WILLIAMS, | : | |
| Defendant-Appellant. | : | |

Criminal Appeal From: Hamilton County Municipal Court

Judgment Appealed From Is: Affirmed

Date of Judgment Entry on Appeal: November 10, 2020

*Joeseph T. Deters,* Hamilton County Prosecuting attorney, and *Mary Stier*, Assistant County Prosecuting Attorney, for Plaintiff-Appellee,

*Raymond T. Faller*, Hamilton County Public Defender, and *Lora Peters*, Assistant Public Defender, for Defendant-Appellant.

**BERGERON, Judge.**

{¶1}    The cauldron of a crying baby, a frustrated parent, a cross word, and a violent reaction provides the backdrop to this appeal that springs from defendant-appellant Donald Williams's domestic violence conviction under R.C. 2919.25.  Mr. Williams presents two assignments of error: that he should have received a presumption of self-defense, and that his conviction was not supported by the weight and sufficiency of the evidence.  We conclude, however, that Mr. Williams presented insufficient evidence to generate a reasonable doubt regarding self-defense, and we see ample evidence supporting his conviction.  We therefore overrule both assignments of error and affirm the trial court's judgment.

I.

{¶2}    This case arises from an altercation between Mr. Williams and his then-girlfriend, Jermaica McNear, with whom he had been living for about a month.  Returning from a trip to the grocery store, Ms. McNear entered her apartment as Mr. Williams began badgering her about her baby wearing an ill-fitting diaper.  Frustrated, Ms. McNear went inside and took the baby into the bedroom, ostensibly searching for some peace and quiet.  With a chorus of complaints swirling, however, Mr. Williams followed her, bringing a bottle for the baby while still agitating about the diaper.  Perhaps attempting to tune out his grievances, Ms. McNear began feeding the baby as Mr. Williams began talking to someone on his phone, using his ear pods.  Ms. McNear then overheard him call her a derogatory name during the call, which prompted her to swat the ear pods from his ears.

{¶3}    Mr. Williams did not respond kindly to that act.  As Ms. McNear returned to sit down on the bed and continue her feeding, he lunged forward and pinned her to the bed, refusing to let her up.  A struggle ensued as Ms. McNear attempted to escape, but Mr.

2

Williams allegedly assaulted her as the couple tumbled onto the floor and into the hallway. At some point, Ms. McNear attempted to call the police, but Mr. Williams grabbed her phone and smashed it. Eventually, a neighbor overheard the commotion and intervened to break up the melee.

{¶4} At trial, Ms. McNear testified that Mr. Williams choked her three times during the confrontation and that he punched her in the face as she clutched her baby. Photos taken a few days after the altercation showed swelling and bruising to her face. Ms. McNear also testified that her injuries prevented her from eating, talking, and sleeping for several days; and that she went to the hospital three times to receive treatment. Mr. Williams, of course, disputed this version of the events, claiming that Ms. McNear initiated the attack by swiping his ear buds, and he also questioned the extent and veracity of her injuries in an effort to undermine her credibility. The trial court, however, was unmoved by his story, and following a bench trial, the court found Mr. Williams guilty of domestic violence and sentenced him to 180 days in jail. This appeal follows.

II.

{¶5} In his first assignment of error, Mr. Williams argues that the trial court erred in its application of the new version of Ohio's self-defense statute—R.C. 2901.05. More specifically, Mr. Williams insists that the prosecution should have borne the burden of disproving the elements of self-defense because the evidence "tends to support" a self-defense justification, and that the trial court erred in finding otherwise. We review de novo whether the trial court applied the proper legal standard and whether evidence of self-defense sufficed to shift the burden of persuasion to the prosecution. *State v. Petway*, 2020-Ohio-3848, ___N.E.3d___, ¶ 38 (11th Dist.) ("[W]hether sufficient evidence has been presented to raise an affirmative defense of self-defense is a question of law.").

{¶6} We see two problems with Mr. Williams's argument. First, the record contains no hint that the trial court failed to apply the proper legal standard. To be sure, the law recently changed on self-defense, and we have considered cases where trial courts have not applied the new law. *See State v. Parrish*, 1st Dist. Hamilton No. C-190379, 2020-Ohio-4807, ¶ 1 (reversing trial court because it "failed to apply the new burden-shifting provision of the self-defense statute"). But our review of the record fails to persuade us this is such a case.

{¶7} The General Assembly recently amended R.C. 2901.05 to shift the burden of persuasion: "the prosecution [must] disprove at least one of the elements of self-defense beyond a reasonable doubt." *Petway* at ¶ 55. However, the amended statute does not affect the burden of production—it remains with the defendant. *Id.* Just as before, subsection (A) imposes upon the defendant "[t]he burden of going forward with the evidence of an affirmative defense." R.C. 2901.05(A). As a result, the prosecution does not assume the burden of persuasion until the defendant first meets his burden of production.

{¶8} However, the new language in subsection (B) also provides that the burden of persuasion shifts to the prosecution when "there is evidence presented that *tends to support*" a self-defense justification. (Emphasis added.) R.C. 2901.05(B)(1). Although the "tends to support" language is a new feature of the statute, we recently joined our sister districts in concluding that the added phrase does not change the nature of the defendant's burden of production. *Parrish* at ¶ 13 ("The * * * amended [] language * * * did not alter a defendant's procedural burden 'of going forward with the evidence' with regard to * * * affirmative defenses * * * ."); *Petway* at ¶ 50, 69 (holding that "the 'tends to support' standard under the amended statute is not substantively different than" the "burden of going forward with the evidence," as construed by the Ohio Supreme Court); *State v. Tolle*,

4th Dist. Adams No. 19CA1095, 2020-Ohio-935, ¶ 24 ("Placed in context, the phrase 'tends to support' does not connote that a new standard should apply to the determination of whether a defendant is entitled to a self-defense instruction.").

{¶9} It is well-settled that the burden of going forward with evidence is met when the evidence, if true, "would raise a question in the minds of reasonable [jurors] concerning the existence of such issue." *State v. Melchior*, 56 Ohio St.2d 15, 381 N.E.2d 195 (1978), paragraph one of the syllabus. Accordingly, in *Parrish*, we explained that, to meet the burden of production under the amended statute, a defendant must produce evidence that, "when viewed in the light most favorable to the defendant, is sufficient to cast a reasonable doubt as to guilt." *Parrish*, 1st Dist. Hamilton No. C-190379, 2020-Ohio-4807, at ¶ 14, citing *Melchior* at paragraph one of the syllabus; *see Tolle* at ¶ 24 ("In order for evidence that 'tends' to support an affirmative defense, it must be sufficient to raise a question in the mind of a reasonable juror, as is already required under the existing standard set forth in *Melchior*."); *Petway* at ¶ 70 (same).

{¶10} The record does not establish that the trial court misapplied or refused to apply this new statutory language. Much to the contrary, defense counsel cited the new self-defense statute and the trial court gave no indication that it was applying the old version. In a bench trial, where the record contains no substantiation that the trial court applied the wrong standard, we may presume regularity of the proceedings. *State v. Wright*, 3rd Dist. Allen No. 1-2000-71, 2001-Ohio-2124, *4 (April 30, 2001) ("[W]hen reviewing a bench trial an appellate court may presume the trial court applied the law correctly unless the record clearly indicates otherwise.").

{¶11} Even if the trial court declined to apply this new statute, however, Mr. Williams would not secure reversal on this record, and this brings us to the second flaw in

his argument. Mr. Williams can avail himself of the new self-defense statute only if the evidence creates a reasonable doubt as to *each* element of self-defense: "(1) that he was not at fault in creating the situation; (2) that he reasonably believed that he needed to use some force to defend himself against the imminent use of unlawful force; and (3) that the force used was not likely to cause death or great bodily harm." *State v. Salaam*, 2015-Ohio-4552, 47 N.E.3d 495, ¶ 15 (1st Dist.), quoting *State v. Browner*, 1st Dist. Hamilton No. C–100247, 2010 Ohio App. LEXIS 5260, ¶ 8 (Dec. 15, 2010); *Parrish* at ¶ 14 (" 'The trial court must * * * determine * * * whether [the evidence] * * * would under the legal tests applied to a claim of self-defense permit a reasonable doubt as to guilt * * * .' "), quoting *State v. Robinson*, 47 Ohio St.2d 103, 111, 351 N.E.2d 88 (1976); *Petway*, 2020-Ohio-3848, ___N.E.3d___, at ¶ 52 ("Since the elements of self-defense are cumulative, the defendant's failure to show legally sufficient evidence raising an issue on either element warrant[s] the refusal of a self-defense instruction."); *State v. Kovacic*, 2012-Ohio-219, 969 N.E.2d 322, ¶ 22 (11th Dist.) ("[I]n order to be entitled to an instruction on self-defense, a defendant is required to present some evidence as to each of the [] three elements * * * .").

{¶12} Here, Mr. Williams points to no evidence raising a reasonable doubt as to the second element of self-defense: whether he reasonably believed force was necessary to prevent imminent use of force by Ms. McNear. Mr. Williams struggles to justify his assault on Ms. McNear by claiming he needed to subdue her after she swiped his ear pods to prevent her from further attacking him. This argument strains credulity. Swiping ear pods, by itself, is woefully inadequate to create a reasonable doubt that he was under a threat of serious bodily harm. And Mr. Williams points to no accompanying evidence to otherwise engender a reasonable belief that he faced such danger. To the contrary, the evidence showed that, after swiping the ear pods, Ms. McNear sat back down on the bed to resume

6

feeding her baby (hardly a harbinger of a forthcoming assault) before Mr. Williams launched his attack.

{¶13} At oral argument, perhaps appreciating the difficulty of utilizing the ear pod swipe theory of self-defense, counsel refined the argument to suggest that Ms. McNear actually attacked Mr. Williams after he pinned her to the bed. But we see no substantiation of that in the record. To the contrary, the evidence adduced at trial revealed that, in response to being pinned to the bed, Ms. McNear wrestled herself onto the floor in an effort to escape, and that Mr. Williams's unwillingness to release her and choking her in the midst of all of this caused her injuries. As a result, Mr. Williams did not satisfy his burden of production to require the prosecution to disprove self-defense. To the extent that the trial court applied the incorrect standard, we find any such error harmless. *See* Crim.R. 52(A). We therefore overrule this assignment of error.

III.

{¶14} In his second assignment of error, Mr. Williams insists that his conviction was against both the sufficiency and manifest weight of the evidence. We address each of these in turn.

{¶15} Mr. Williams posits that insufficient evidence supported his conviction under R.C. 2919.25(A) because the evidence did not show that Ms. McNear was a "household member." We review this sufficiency question de novo. *State v. Ellison*, 178 Ohio App.3d 734, 2008-Ohio-5282, 900 N.E.2d 228, ¶ 9 (1st Dist.). And we "assess whether, construing the evidence in a light most favorable to the state, 'any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt.' " *State v. Brown*, 2019-Ohio-3349, 141 N.E.3d 661, ¶ 11 (1st Dist.), quoting *State v. Jenks*, 61 Ohio St.3d 259, 574 N.E.2d 492 (1991), paragraph two of the syllabus.

{¶16} The Ohio Revised Code provides that "[n]o person shall knowingly cause or attempt to cause physical harm to a family or household member." R.C. 2919.25(A). As applicable here, a "household member" includes a "person living as a spouse." R.C. 2919.25(F)(1)(a)(i). And Ms. McNear is a "person living as a spouse" if she "has cohabitated with [Mr. Williams] within five years prior to the [offense]." R.C. 2919.25(F)(2).

{¶17} To establish "cohabitation," the Ohio Supreme Court set forth two necessary elements: "(1) sharing of familial or financial responsibilities and (2) consortium." *State v. Williams*, 79 Ohio St.3d 459, 683 N.E.2d 1126 (1997), paragraph two of the syllabus. These two elements can be supported by various factors, and "how much weight, if any, to give to each of these factors must be decided on a case-by-case basis by the trier of fact." *Id.* at 465. Some factors supporting the sharing of responsibilities include "shelter, food, clothing, utilities, and/or commingled assets." *Id.* And consortium might be proven by "mutual respect, fidelity, affection, society, cooperation, solace, comfort, aid of each other, friendship, and conjugal relations." *Id.*

{¶18} The evidence in this case established both elements of "cohabitation." Regarding the "sharing of familial or financial responsibilities": (1) Ms. McNear was providing shelter by allowing Mr. Williams to live at her apartment; (2) she had just returned with groceries (presumably, Mr. Williams would partake of those as well); (3) Mr. Williams was making a bottle for the baby (reflecting a sharing of familial obligations); and (4) the entire incident started over Mr. Williams's frustration about the size of the baby's diaper. And as to cohabitation, the evidence showed that their relationship at the time was "boyfriend and girlfriend," and they had been living together for at least a month. This

8

evidence readily satisfies the elements of cohabitation. Ms. McNear was therefore a "household member" under the domestic violence statute. R.C. 2919.25(A).

{¶19} Finally, Mr. Williams argues that his conviction was against the manifest weight of the evidence. In reviewing whether the judgment was against the weight of the evidence, we sit as a "thirteenth juror." *State v. Thompkins*, 78 Ohio St.3d 380, 387, 678 N.E.2d 541 (1997). In other words, we review the evidence, the credibility of witnesses—the entire record. *Id.* But we will only reverse if the trial court "clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered." *Id.*, quoting *State v. Martin*, 20 Ohio App.3d 172, 175, 485 N.E.2d 717 (1st Dist. 1983).

{¶20} Mr. Williams primarily argues that it was unreasonable for the trial court to believe that he caused the bruising and swelling shown in the pictures. The pictures were taken a few days after the altercation, and the evidence suggested that the swelling and bruising were not apparent when police first arrived. In Mr. Williams's view, it "is not logical to believe that swelling * * * would lie dormant for two days." But the trial court found the photographs authentic, correctly observing that no evidence cast doubt on the authenticity of their depiction. Additionally, the court noted that Ms. McNear testified that "she went to the hospital on three separate occasions, that she couldn't eat, she couldn't swallow, that she suffered the effects of this beating for an extended period of time." In sum, the court had ample evidence to conclude that Mr. Williams invoked violence against Ms. McNear without any justification for doing so. His conviction was not against the manifest weight of the evidence.

*     *     *

{¶21} In light of the foregoing analysis, we overrule both of Mr. Williams's assignments of error and affirm the judgment of the trial court.

Judgment affirmed.

**MYERS, P. J.,** and **WINKLER, J.,** concur.

Please note:

The court has recorded its entry on the date of the release of this opinion