[Cite as *State v. Lawler*, 2023-Ohio-3933.]

COURT OF APPEALS
FAIRFIELD COUNTY, OHIO
FIFTH APPELLATE DISTRICT

| | |
|---|---|
| STATE OF OHIO | JUDGES:<br>Hon. William B. Hoffman, P.J. |
| Plaintiff-Appellee | Hon. John W. Wise, J.<br>Hon. Craig R. Baldwin, J. |
| -vs- | |
| | Case No. 2023 CA 00009 |
| MICHAEL R. LAWLER | |
| Defendant-Appellant | O P I N I O N |


CHARACTER OF PROCEEDINGS:        Appeal from the Fairfield County Municipal
                                 Court, Case No. 21-CRB-1613


JUDGMENT:                        Affirmed

DATE OF JUDGMENT ENTRY:          October 27, 2023


APPEARANCES:


For Plaintiff-Appellee                   For Defendant-Appellant

JOSEPH M. SABO                           JAMES L. DYE
City of Lancaster Law Director's Office   P.O. Box 161
136 West Main Street                     Pickerington, Ohio 43147
P.O. Box 1008
Lancaster, Ohio 43130

*Hoffman, P.J.*

{¶1} Defendant-appellant Michael R. Lawler appeals his convictions and sentence entered by the Fairfield County Municipal Court, on one count of assault and one count of menacing, following a bench trial. Plaintiff-appellee is the state of Ohio.

### STATEMENT OF THE CASE AND FACTS

{¶2} On December 14, 2021, affidavits were filed in the Fairfield County Municipal Court, charging Appellant with domestic violence, in violation of R.C. 2919.25(A), a misdemeanor of the first degree; assault, in violation of R.C. 2901.13(A), a misdemeanor of the first degree; aggravated menacing, in violation of R.C. 2903.21, a misdemeanor of the first degree; and menacing, in violation of R.C. 2903.22, a misdemeanor of the fourth degree. Appellant appeared before the trial court for arraignment on January 6, 2022, and entered a plea of not guilty to the charges. Appellant filed a jury demand and waived his right to a speedy trial.

{¶3} The matter proceeded to jury trial on October 20, 2022. After the jury was sworn-in and the parties presented opening statements, but prior to the presentation of any evidence, Attorney Andrew Sanderson, counsel for Appellant, moved for a mistrial. The trial court granted Appellant's motion for mistrial without prejudice to the prosecution. See, November 8, 2022 Entry Declaring a Mistrial without Prejudice to the Prosecution and Discharging the Jury, Record at 70. On December 14, 2022, Appellant filed a notice of intent to waive jury. The matter proceeded to bench trial on February 22, 2023.

{¶4} Lancaster Police Officer Franklin Graf testified he was on routine patrol during the 3 p.m. to 11 p.m. shift on August 31, 2021, when he responded to a possible domestic disturbance at 1030 South Broad Street, Lancaster, Fairfield County, Ohio. Officer Ayers assisted Officer Graf. When they arrived, the officers found Hayley Cottrill

on the back porch of the residence. Officer Graf described Cottrill as upset and crying and it "[s]eemed like something was wrong." Transcript of February 22, 2023 Proceedings at p. 10. Officer Graf noted Cottrill appeared to be in pain and complained of shoulder pain. Officer Graf observed visible injuries to Cottrill's arm, shoulder, and head. Cottrill was hesitant to tell the officers how she received the injuries and repeatedly told the officers "everything was okay." Id. at p. 16.

{¶5} Lancaster Police Officer Luke Ayers testified he was on routine patrol during the 3 p.m. to 11 p.m. shift on August 31, 2021, when he and Officer Graf were dispatched to 1030 South Broad Street, at approximately 8:00 p.m., in response to a domestic violence call. Upon arriving at the residence, the officers made contact with Cottrill. Officer Ayers recalled Cottrill appeared frightened, but "didn't really want to tell us what had happened." Id. at p. 41. Cottrill was reluctant to speak with the officers and repeatedly stated she was fine and did not need their help. Officer Ayers indicated Cottrill was unable to straighten one of her arms and she had a knot on the back of her head. The officer observed redness or bruising on Cottrill's arm. Cottrill would not provide the officers with any information. Based upon their investigation, the officers determined there had been a physical altercation between Cottrill and Appellant, her live-in boyfriend. Appellant was not at the residence when Officers Ayers and Graf arrived, and he did not return to the residence while the officers were on the scene.

{¶6} Video from Officer Ayers' body camera was played for the trial court. Officer Ayers explained it was apparent Cottrill was fearful because "when Officer Graf first asked her what happened she said, 'please don't make me do this,' just in her voice, her

mannerisms she appeared like she's afraid." *Id.* at p. 47. Officer Ayers stated Cottrill did not appear to be under the influence of alcohol or drugs.

{¶7}  Hayley Cottrill testified Appellant lived with her and her two children at the 1030 South Broad Street residence on the date of the incident. Cottrill and Appellant had been in a relationship for eight (8) or nine (9) months at the time. Cotrill was sitting on the back porch when Appellant arrived at the residence between 7:15 and 7:30 p.m. on August 31, 2021. Cottrill confronted Appellant about his cheating on her. Cottrill recalled, "[h]e freaked out. * * * He was like in my face, grabs me and was like I wouldn't do that, I didn't do that, which was very angry." *Id.* at p. 75. Appellant grabbed Cottrill by the neck. She was able to free herself from Appellant's grip and retreated to the bedroom. Appellant barged through the bedroom door, grabbed Cottrill by the neck, threw her onto the bed, and held her down. Cottrill kicked Appellant to get away. Cottrill fled to the living room. Appellant grabbed Cotrill off the couch and threw her down. Cottrill's daughter woke up. As Cottrill proceeded upstairs to bring her a cup of milk, Appellant stopped her and grabbed her left arm. Cottrill threw the cup of milk at Appellant, striking him in the face. Cottrill did not know if the sippy cup caused any injury to Appellant's face. Appellant threw Cottrill down the stairs. As a result, Cottrill injured her hip, shoulder, arm, leg, and head.

{¶8}  Cottrill ran outside and attempted to call her father. Appellant grabbed her phone and threw it. Appellant made threatening statements to Cottrill, warning her not to call the police. Cottrill was finally able to speak with her father. She tried to explain what happened. Her father immediately telephoned the police. After making three or four trips into the residence in order to gather his belongings, Appellant entered his vehicle and drove away. Officers arrived approximately ten minutes after Appellant left the residence.

Cottrill explained she did not want to tell the officers what had happed because she feared for her safety and the safety of her children. Video from Officer Ayer's body camera was played. The video showed medics attending to Cottrill. When asked why she told the medics she was not sure how she sustained the injury to her elbow, Cottrill responded, "Because the police were still standing there. * * * I was just too afraid at that point to talk to the police." *Id.* at pp. 96-97. Cottrill stated she was "[b]arely 90 pounds" at the time of the incident. *Id.* at p. 97. Cottrill identified the injuries she sustained from photographs she took following the incident.

{¶9}     Phillip Cottrill, Hayley's father, testified he received a call from his daughter on August 31, 2021, but missed it as he was at the store. When he returned home, Mr. Cottrill called Cottrill, but there was no answer. Cottrill called her father again, but when Mr. Cottrill answered, the phone was hung up. Mr. Cottrill called Cottrill again, but again there was no answer. When Cottrill called for the third time, Mr. Cottrill answered and his daughter was "screaming he hit me." *Id.* at p. 134. Mr. Cottrill and his wife proceeded to Cottrill's residence. Appellant passed them in his vehicle, traveling in the opposite direction. Thereafter, Mr. Cottrill called 9-1-1. Mr. Cottrill proceeded to follow Appellant to ensure he did not return to the residence, but lost sight of him. Mr. Cottrill continued to drive in the same direction as Appellant and saw Appellant had been pulled over by police.

{¶10}  At the close of the state's case, Appellant moved for acquittal pursuant to Crim. R. 29. The trial court overruled Appellant's motion.

{¶11} Appellant called Christine Cooper, Appellant and Cottrill's next door neighbor, in his defense. Cooper testified she received a call from Cottrill at

approximately 8:40 p.m. on August 31, 2021.  Cooper recalled Cottrill was crying.  When Cottrill learned Cooper was in bed, Cottrill told Cooper she would talk to Cooper in the morning.  Cooper put on her house dress and slippers and walked next door.  Cooper was at Cottrill's residence fifteen (15) or twenty (20) minutes before the police arrived.  Cooper did not observe any evidence of a struggle in the home.  Cooper remained at Cottrill's residence until 10:30 p.m.

{¶12}  On cross-examination, Cooper described Cottrill as upset and crying when she (Cooper) arrived the evening of August 31, 2021.  Cottrill told Cooper her arm was broken.  When Cooper asked how Cottrill broke her arm, Cottrill responded she bumped into a wall.  Cottrill also told Cooper she and Appellant were bickering because Appellant wanted to leave, but Cottrill would not let him.  According to Cooper, Cottrill admitted to attacking Appellant, trying to stop him from leaving.  Cooper stated she did not observe any visible marks on Cottrill except for "one little one."  Tr. at p. 165.  Cooper admitted she did not see what occurred between Appellant and Cottrill.

{¶13}  On redirect examination, Cooper testified Cottrill admitted she was the aggressor.  Cooper added, ". . . and I've seen her be aggressive."  *Id.* at p. 168.  On re-cross-examination, Cooper reiterated Cottrill was crying, but stated she appeared angry, not scared.  Cottrill remarked, "She's a bad loser. * * * And she did not control the situation so she was not happy."  *Id.*

{¶14}  Appellant testified on his own behalf. Appellant appeared at trial in his military uniform although he was not currently serving in order to "show [his] character."  *Id.* at 171.  Appellant stated, despite seeing combat action, he had never been disfigured until Cottrill assaulted him.

**{¶15}** Appellant stated he stayed at Cottrill's residence approximately one week out of the month when he was in Ohio, adding he did not receive mail at the residence and did not pay any bills or taxes associated with the residence. Appellant's permanent residence was in the state of Florida. Regarding the evening of August 31, 2021, Appellant recalled he returned to Cottrill's residence after having dinner with friends and Cottrill immediately accused him of cheating on her. Appellant described Cottrill as "freaking out on me yelling about she da da da." *Id.* at p. 177. Appellant recalled Cottrill's son started to cry and he (Appellant) went to get the child a sippy cup of milk. Appellant noted Cottrill was incorrect when she testified her daughter was crying. As Appellant was ascending the stairs with the cup, Cottrill exited her bedroom, grabbed the cup from Appellant, and proceeded to her child's bedroom. Appellant began packing his belongings and, as Cottrill was coming downstairs, he told her he was done.

**{¶16}** Appellant continued:

This is not the first time [Cottrill's] assaulted me. I said, I'm done. I can't do this anymore. And she said – I want to say her exact words were, "the hell you are," or "the hell we are." And that's when she came barreling down the stairs. And she – none of this happened on the stairs. This is at the base of the stairs, literally jumped on me and just whaling [sic] me in the head, my hand. She had the cup in one hand and I think her phone at that point – or maybe it was either my phone still in the other hand. And that's what she had been hitting me with.

*Id.* at p 178.

{¶17} Appellant managed to get away from Cottrill and placed his belongings in his car. Appellant denied causing physical harm to or threatening Cottrill on August 31, 2021. Appellant stated he did not re-enter the residence after bringing his belongings to his car. He added he retrieved a backpack which was on the back porch, but not inside the home.

{¶18} On cross-examination, Appellant admitted he pushed Cottrill out of the way as he was exiting the residence, but denied causing any of her injuries and insisted she did not fall as a result of the push. Appellant repeatedly asserted Cottrill attacked him and "beat the crap out of me." *Id.* at p. 188.

{¶19} Appellant indicated he had no contemporaneous pictures of the injuries caused by Cottrill. He stated he did not go to the police to report the incident because "I'm not about that. * * * that's not where my mind was. I was getting my hand fixed." *Id.* at 188. Appellant explained he was traveling to Columbus to have a friend, who is a nurse, look at his finger. Appellant added he did not go to the emergency room because he did not have health insurance. Appellant claimed his pinky finger had to be amputated due to the injury caused by Cottrill's assault. The state showed Appellant photographs which showed a disfigurement of his pinky finger prior to August 31, 2021. Appellant responded the photographs show an injury different from the one caused by Cottrill.

{¶20} After hearing the evidence, the trial court found Appellant guilty of assault and menacing, but not guilty of domestic violence and aggravated menacing. The trial court sentenced Appellant to 210 days in jail with 190 days suspended and 20 days actual incarceration, and placed him on two (2) years of non-reporting probation.

**{¶21}** It is from these convictions and sentence Appellant appeals, raising as his sole assignment of error:

THE TRIAL COURT ERRED AND THEREBY DEPRIVED APPELLANT DUE PROCESS OF LAW AS GUARANTEED BY THE FOURTEENTH AMENDMENT TO THE UNITED STATES CONSTITUTION AND COMPARABLE PROVISIONS OF THE OHIO CONSTITUTION BY FINDING APPELLANT GUILTY, AS THE VERDICT FOR THE CHARGES OF ASSAULT AND MENACING WERE AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE.

I

**{¶22}** In his sole assignment of error, Appellant maintains his convictions were against the weight of the evidence because the evidence supported a conclusion he acted in self-defense.

**{¶23}** The state's burden of disproving a defendant's self-defense claim beyond a reasonable doubt is subject to a manifest-weight review on appeal. *State v. Messenger*, 171 Ohio St.3d 227, 2022-Ohio-4562, 216 N.E.3d 653, ¶27. In determining whether a verdict is against the manifest weight of the evidence, the appellate court acts as a thirteenth juror and "in reviewing the entire record, weighs the evidence and all reasonable inferences, considers the credibility of witnesses, and determines whether in resolving conflicts in evidence the jury 'clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered.' "

*State v. Thompkins*, 78 Ohio St. 3d 380, 387, 1997-Ohio-52, 678 N.E.2d 541, *quoting State v. Martin*, 20 Ohio App. 3d 172, 175, 485 N.E.2d 717 (1983).

**{¶24}** To establish self-defense in the use of non-deadly force, the accused must show: (1) he was not at fault in creating the situation giving rise to the affray; (2) he had reasonable grounds to believe or an honest belief he was in imminent danger of bodily harm; and (3) he did not use more force than was reasonably necessary to defend against the imminent danger of bodily harm. *State v. Paskins,* 5th Dist. No. 2021 CA 00033, 2022-Ohio-4024, 200 N.E.3d 684, ¶ 48, *citing State v. Staats*, 5th Dist. Stark No. 2019CA00181, 2021-Ohio-1325, 2021 WL 1502535, ¶28.

**{¶25}** Pursuant to R.C. 2901.05, if there is evidence presented at trial which tends to support a claim the defendant used force against another in self-defense or in defense of another, the state must prove beyond a reasonable doubt the defendant did not use the force in self-defense or defense of another. R.C. 2901.05(B)(1). Once the initial showing is made, the burden of persuasion requires the state to disprove at least one of the elements of self-defense beyond a reasonable doubt. *State v. Petway*, 2020-Ohio-3848, 156 N.E.3d 467, ¶ 55 (3d Dist. Lake); *State v. Carney*, 10th Dist. Franklin No. 19AP-402, 2020-Ohio-2691, ¶ 31.

**{¶26}** In support of his assertion he acted in self-defense, Appellant points to the testimony of Christine Cooper as well as his own testimony.

**{¶27}** Cooper testified she received a call from Cottrill at approximately 8:40 p.m. Cooper recalled Cottrill was crying. Cooper did not observe any signs of a struggle within the residence. On cross-examination, Cooper stated Cottrill indicated she broke her arm after bumping into a wall. Cottrill told Cooper Appellant wanted to leave and they began

to bicker.  According to Cooper, Cottrill admitted she "[k]ept attacking him," trying to stop Appellant from leaving.  Tr. at p. 165.  Cooper did not observe any visible marks on Cottrill except for "one little one" on her arm.  *Id.*  On redirect, Cooper recalled Cottrill indicated she hit Appellant with a sippy cup.  Cooper added Cottrill admitted she was the aggressor.  Cooper did not observe the altercation between Appellant and Cottrill.

{¶28}  Appellant testified, when he returned home after an evening with friends, Cottrill accused him of cheating.  After some arguing, Appellant told Cottrill he was "done" and he could not "do this anymore."  *Id.* at p. 178.  Appellant stated Cottrill jumped on him and began hitting him with the plastic sippy cup.  Appellant managed to get away, packed his belongings, and left.  Appellant denied causing any injury to Cottrill.  Appellant did not have any photographs of the injuries he sustained, but claimed his left pinky finger had to be amputated because of Cottrill's assault.  The state entered into evidence photographs which showed a disfigurement to Appellant's left pinky finger.  The photographs were taken before the August 31, 2021 incident, yet Appellant denied having a pre-existing injury to his left pinky finger.

{¶29}  We find the state met its burden of disproving Appellant's claim of self-defense beyond a reasonable doubt.  We further find Appellant failed to establish (1) he was not at fault in creating the situation giving rise to the affray; (2) he had reasonable grounds to believe or an honest belief he was in imminent danger of bodily harm; and (3) he did not use more force than was reasonably necessary to defend against the imminent danger of bodily harm.

{¶30}  Officers Graf and Ayers testified, when they arrived at Cottrill's residence, she was upset, crying, and frightened.  Cottrill appeared to be in pain and complained of

shoulder pain. The officers observed visible injuries to Cottrill's arm, shoulder, and head. Cottrill was reluctant to speak with the officers and repeatedly stated she was fine and did not need their help. Video from Officer Ayers' body camera was played for the trial court. Officer Ayers explained it was apparent Cottrill was fearful because "when Officer Graf first asked her what happened she said, 'please don't make me do this,' just in her voice, her mannerisms she appeared like she's afraid." *Id.* at p. 47.

{¶31} Cotrill recalled Appellant arrived at the residence between 7:15 and 7:30 p.m. on August 31, 2021, and she confronted him about his infidelity. Cottrill testified Appellant freaked out, grabbed her, and became very angry. Appellant grabbed Cottrill by the neck, but she was able to free herself and retreated to the bedroom. Appellant barged through the bedroom door, grabbed Cottrill by the neck, threw her onto the bed, and held her down. Cottrill was again able to get away and ran to the living room. Appellant grabbed Cotrill off the couch and threw her down. As Cottrill proceeded upstairs with a cup of milk for her daughter who had woken up, Appellant stopped her and grabbed her left arm. Cottrill threw the cup of milk at Appellant, striking him in the face. Appellant threw Cottrill down the stairs.

{¶32} The state presented video from Officer Ayer's body camera in which Cottrill's injuries can be seen. The state also presented photographs Cottrill took of her injuries subsequent to the incident.

{¶33} "A self-defense claim is generally an issue of credibility." *State v. Olsen*, 11th Dist. Ashtabula No. 2022-A-0071, 2023-Ohio-2254, ¶ 57. "Disputes in credibility for the purposes of evaluating self-defense are best resolved by the trier of fact." *State v. Bentley*, 11th Dist. Lake Nos. 2022-L-076, 2022-L-0802023-Ohio-1792, ¶ 24. "It has been

held that 'a conviction is not against the manifest weight of the evidence because the trier of fact believed the state's version of events over the defendant's version' and rejected the defendant's claim of self-defense." *Id.*, citing *State v. Messenger*, 2021-Ohio-2044, 174 N.E.3d 425, ¶ 49 (10th Dist.). When weighing witness testimony supporting a claim of self-defense, the trier of fact is "free to believe or disbelieve the testimony of the witnesses" and "is in the best position to take into account inconsistencies, along with the witnesses' manner and demeanor, and determine whether the witnesses' testimony is credible." *Bentley* at ¶ 24, citing *State v. Haney*, 11th Dist. Lake No. 2012-L-098, 2013-Ohio-2823, ¶ 43.

**{¶34}** It is evident the trial court chose to believe the testimony of Officers Graf and Ayers as well as Cottrill.

**{¶35}** Appellant's sole assignment of error is overruled.

**{¶36}** The judgment of the Fairfield County Municipal Court is affirmed.


By: Hoffman, P.J.

Wise, J.  and

Baldwin, J. concur