[Cite as *State v. George*, 2024-Ohio-2125.]

# IN THE COURT OF APPEALS OF OHIO
## ELEVENTH APPELLATE DISTRICT
## PORTAGE COUNTY

STATE OF OHIO,
CITY OF RAVENNA,

          Plaintiff-Appellee,

- vs -

LAUREL GEORGE,

          Defendant-Appellant.

CASE NO. 2023-P-0087

Criminal Appeal from the
Municipal Court, Ravenna Division

Trial Court No. 2023 CRB 00579 R

**O P I N I O N**

Decided: June 3, 2024
Judgment: Affirmed

*Victor V. Vigluicci*, Portage County Prosecutor; *Theresa M. Scahill* and *Pamela J. Holder*, Assistant Prosecutors, 241 South Chestnut Street, Ravenna, OH 44266 (For Plaintiff-Appellee).

*Eric J. Cherry,* N.P. Weiss Law, 3091 Mayfield Road, Suite 320, Cleveland Heights, OH 44118 (For Defendant-Appellant).

MARY JANE TRAPP, J.

{¶1} Appellant, Laurel George ("Mr. George"), appeals his conviction for domestic violence following a bench trial in the Portage County Municipal Court, Ravenna Division.

{¶2} Mr. George asserts four assignments of error, contending (1) he was denied due process of law because the state did not produce exculpatory or mitigating evidence in discovery; (2) he was denied due process of law because the trial court did not require the state to disprove self-defense beyond a reasonable doubt; (3) the trial court erred by admitting other-acts evidence; and (4) he received ineffective assistance of trial counsel.

{¶3}  After a careful review of the record and pertinent law, we find as follows:

{¶4}  (1)  Mr. George has not established a due process violation regarding the state's alleged failure to produce body camera footage and a 911 recording.  Mr. George references the 911 recording for the first time on appeal.  In addition, since it remains unknown whether the evidence actually existed, Mr. George has necessarily failed to demonstrate that it was favorable to him, that the state suppressed it, or resulting prejudice.

{¶5}  (2)  To the extent Mr. George is arguing that the trial court misapplied the law of self-defense, a trial court judge is presumed to know the applicable law, and Mr. George has failed to point to anything in the record that affirmatively demonstrates the trial court misapplied it.  To the extent Mr. George is arguing that his conviction is against the manifest weight of the evidence, the trial court did not clearly lose its way and create a manifest miscarriage of justice in choosing to believe the victim's testimony.

{¶6}  (3)  Mr. George has not established plain error regarding the admission of other-acts evidence during the bench trial.  Mr. George has not pointed to anything in the record that affirmatively demonstrates the trial court considered other-acts evidence in reaching its guilty verdict.

{¶7}  (4)  Mr. George has not established ineffective assistance regarding counsel's failure to request body camera footage and the 911 recording.  Since it is unknown whether the evidence actually existed, Mr. George has necessarily failed to demonstrate that trial counsel performed deficiently in failing to request it or resulting prejudice.

{¶8}  Thus, Mr. George's assignments of error are without merit, and we affirm the judgment of the Portage County Municipal Court, Ravenna Division.

2

## Substantive and Procedural History

{¶9} In the early morning hours of March 3, 2023, Mr. George and his fiancé, D.C., had an argument at their home in Deerfield that escalated into physical violence. Mr. George called 911 and reported the incident. At approximately 1:00 a.m., three police officers were dispatched to a "combative domestic incident."

{¶10} Deputy Hoffman of the Portage County Sheriff's Department arrived, and Mr. George met him outside. The two other officers arrived and interviewed D.C. inside the house. According to Deputy Hoffman, Mr. George smelled mildly of alcohol. Mr. George explained that he and D.C. were arguing and began to shove each other. Mr. George admitted to striking D.C. in the face but said he did so "to keep her off" him. Deputy Hoffman's supervisor instructed him over the radio to arrest Mr. George. Deputy Hoffman did so and transported Mr. George to the Portage County Jail.

{¶11} D.C. would later testify that she and Mr. George had been arguing all day and were screaming back and forth. The argument began because Mr. George had been gone for two days. She admitted to being intoxicated at the time. At one point, D.C. was holding the couple's infant son, and Mr. George punched her in the face. Afterward, she noticed she had suffered a black eye, a scratch on her face, and bruises on her arms. She then heard Mr. George call the police. She advised him to hang up the phone because the police would likely arrest him once they saw her face. When the officers arrived, Mr. George ran outside to meet them. D.C. told the officers what happened but did not cooperate in the subsequent investigation.

{¶12} Mr. George would later testify that he was trying to sleep after working a 12-hour shift and taking care of the couple's infant son when D.C. began yelling at and

3

hitting him. Mr. George denied hitting D.C. and suggested she obtained a black eye when he grabbed her arm.

{¶13} Deputy Hoffman filed a criminal complaint against Mr. George in the Portage County Municipal Court, Ravenna Division, charging him with one count of domestic violence, a first-degree misdemeanor, in violation of R.C. 2919.25(A). The complaint alleged that Mr. George did knowingly attempt to cause physical harm to a family or household member, to wit: "During an argument, did intentionally strike his live-in girlfriend in the face." D.C. filed a motion for a temporary protection order, which the trial court granted. Mr. George was arraigned, pleaded not guilty, and was released on a recognizance bond.

{¶14} On March 28, 2023, the trial court held a pretrial at which Mr. George failed to appear. The trial court issued a bench warrant for Mr. George's arrest. Two days later, Mr. George emailed the trial judge to request a continuance. The trial court filed an entry stating it could not grant a continuance because Mr. George had not filed a speedy trial waiver but that he could appear in court on any morning to address the bench warrant.

{¶15} In April 2023, Mr. George appeared in court, executed a speedy trial waiver, and applied for appointed counsel. The trial court cancelled the bench warrant and appointed the public defender to represent him.

{¶16} In June 2023, the trial court held a pretrial at which Mr. George failed to appear. The pretrial report signed by defense counsel reflects that the state provided a discovery disc and presented a plea offer.

{¶17} In July 2023, the court held another pretrial at which Mr. George again failed to appear. Shortly thereafter, Mr. George filed a pro se motion for a continuance and a

4

change of address. The trial court granted the continuance, set the matter for trial, and stated Mr. George would receive "no further continuances."

{¶18} On August 29, 2023, the parties and counsel appeared for a bench trial before a visiting judge. Defense counsel requested a continuance to determine whether body camera video footage existed. The prosecutor stated she did not know if the officers had yet received their body cameras when the alleged incident occurred but did not object to a continuance. Deputy Hoffman was present but did not know whether body camera footage existed. The trial court denied the request for a continuance, noting that there had been several instances where the matter could have or should have been resolved and that the parties did not even know if body camera footage existed.

{¶19} The matter proceeded to trial. The state presented testimony from Deputy Hoffman and D.C. Mr. George testified in his own defense. The trial court found Mr. George guilty of domestic violence, ordered a presentence investigation, and set the matter for sentencing.

{¶20} On October 10, 2023, the trial court held a sentencing hearing, where it sentenced Mr. George to a fine of $250 plus costs; 180 days in jail with 150 days suspended and work release; completion of a diagnostic assessment; and supervised probation for six months. The trial court ordered Mr. George to have no contact with D.C.

{¶21} Mr. George filed a notice of appeal and a motion to stay execution of the trial court's judgment pending appeal, the latter of which the trial court granted.

{¶22} Mr. George raises the following four assignments of error:

{¶23} "1. Appellant was denied Due Process of Law as Exculpatory or Mitigating Evidence was not produced in discovery to Appellant.

5

{¶24} "2. Appellant was denied Due Process of Law because the Court did not require the State to disprove self defense beyond a reasonable doubt.

{¶25} "3. The Trial Court erroneously admitted testimony regarding the Appellant's character and propensity to act in conformity with the charged conduct.

{¶26} "4. The Trial Court erred by denying Appellant Effective Assistance of Counsel."

## *Brady* Violation

{¶27} In his first assignment of error, Mr. George contends the state violated his due process rights pursuant to *Brady v. Maryland*, 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963), by failing to produce material evidence prior to trial.

{¶28} An appellate court reviews a *Brady* claim de novo. *See State v. Magwood*, 8th Dist. Cuyahoga No. 108155, 2019-Ohio-5238, ¶ 22.

{¶29} "In *Brady*, the United States Supreme held that a state violates the Due Process Clause of the Fourteenth Amendment to the United States Constitution by suppressing evidence favorable to the accused where the evidence is material to guilt. 373 U.S. at 87, 83 S.Ct. 1194, 10 L.Ed.2d 215. To establish a *Brady* violation, a defendant must demonstrate (1) that the evidence is favorable to the defendant, because it is either exculpatory or impeaching, (2) that the evidence was willfully or inadvertently suppressed by the state, and (3) that the defendant was prejudiced as a result. *Strickler v. Greene*, 527 U.S. 263, 281-282, 119 S.Ct. 1936, 144 L.Ed.2d 286 (1999). Evidence is material— or prejudicial—'"when there is a reasonable probability that, had the evidence been disclosed, the result of the proceeding would have been different."' *Turner v. United States*, 582 U.S. 313, 324, 137 S.Ct. 1885, 198 L.Ed.2d 443 (2017), quoting *Cone v. Bell*, 556 U.S. 449, 469-470, 129 S.Ct. 1769, 173 L.Ed.2d 701 (2009)." *State v. Brown*, Slip

6

Opinion No. 2024-Ohio-749, ¶ 30. "This standard of materiality applies regardless of whether the evidence is specifically, generally or not at all requested by the defense." *State v. Johnston*, 39 Ohio St.3d 48, 529 N.E.2d 898 (1988), paragraph five of the syllabus.

{¶30} Ohio has instituted a system of open discovery in criminal cases pursuant to Crim.R. 16. *State v. Kennedy*, 8th Dist. Cuyahoga No. 112563, 2024-Ohio-66, ¶ 39, fn. 1. *See* Crim.R. 16(A) ("This rule is to provide all parties in a criminal case with the information necessary for a full and fair adjudication of the facts * * *.") "Trial judges have considerable tools available to handle discovery violations, including the granting of continuances and mistrials." *Brown* at ¶ 36; *see* Crim.R. 16(L)(1).

{¶31} "*Brady* applies to the 'the discovery, after trial, of information which had been known to the prosecution but unknown to the defense.' *United States v. Agurs*, 427 U.S. 97, 103, 96 S.Ct. 2392, 49 L.Ed.2d 342 (1976). Thus, '[s]trictly speaking, *Brady* is not violated when disclosure occurs during trial, even when disclosure surprises the defendant with previously undisclosed evidence.' *State v. Iacona*, 93 Ohio St.3d 83, 100, 752 N.E.2d 937 (2001) (lead opinion). Nonetheless, three justices in *Iacona* suggested that 'the philosophical underpinnings of *Brady* support the conclusion that even disclosure of potentially exculpatory evidence during trial may constitute a due process violation if the late timing of the disclosure significantly impairs the fairness of the trial.' *Id.*" *Brown* at ¶ 31.

{¶32} Mr. George argues that the state failed to produce the officers' body camera footage and the audio recording of his 911 call. However, Mr. George references the alleged 911 recording for the first time on appeal. "'A first principle of appellate jurisdiction is that a party ordinarily may not present an argument on appeal that it failed to raise

7

below.'" *Id.* at ¶ 35, quoting *State v. Wintermeyer*, 158 Ohio St.3d 513, 2019-Ohio-5156, 145 N.E.3d 278, ¶ 10.

{¶33} In addition, unlike in *Brady* and *Iacona*, there was no *late* disclosure of evidence. In fact, there was *no* disclosure—it remains unknown from this record whether the 911 recording and the body camera footage actually existed. "Implicit within the first element of a *Brady* claim is that the evidence allegedly withheld must have actually existed." *State v. Black*, 10th Dist. Franklin No. 22AP-180, 2022-Ohio-3119, ¶ 20. *Accord State v. Blade*, 6th Dist. Lucas No. L-22-1091, 2023-Ohio-658, ¶ 23. Thus, Mr. George has necessarily failed to demonstrate that the evidence was favorable to him, that the state suppressed it, or resulting prejudice. Accordingly, Mr. George has not established a *Brady* violation.

{¶34} We acknowledge that Mr. George requested a continuance on the day of trial to ascertain the existence of body camera footage. However, Mr. George has not assigned as error the trial court's denial of his request; thus, we do not address it.

{¶35} Mr. George's first assignment of error is without merit.

### Self-Defense

{¶36} In his second assignment of error, Mr. George contends that the trial court erred by not requiring the state to disprove self-defense beyond a reasonable doubt.

{¶37} R.C. 2901.05(B)(1) provides, in relevant part, "A person is allowed to act in self-defense * * *. If, at the trial of a person who is accused of an offense that involved the person's use of force against another, there is evidence presented that tends to support that the accused person used the force in self-defense * * *, the prosecution must prove beyond a reasonable doubt that the accused person did not use the force in self-defense * * *."

8

{¶38} "A self-defense claim includes the following elements: '(1) that the defendant was not at fault in creating the situation giving rise to the affray; (2) that the defendant had a bona fide belief that he [or she] was in imminent danger of death or great bodily harm and that his [or her] only means of escape from such danger was in the use of such force; and (3) that the defendant did not violate any duty to retreat or avoid the danger.'" *State v. Messenger*, 171 Ohio St.3d 227, 2022-Ohio-4562, 216 N.E.3d 653, ¶ 14, quoting *State v. Barnes*, 94 Ohio St.3d 21, 24, 759 N.E.2d 1240 (2002). In cases involving the use of nondeadly force, like the present case, there is no requirement that a person retreat to avoid the danger, even if such retreat is possible. *State v. Petway*, 2020-Ohio-3848, 156 N.E.3d 467, ¶ 43 (11th Dist.). Under R.C. 2901.05(B)(1), the state has the burden of persuasion to disprove at least one of the elements of self-defense beyond a reasonable doubt. *See id.* at ¶ 55.

{¶39} To the extent Mr. George is arguing that the trial court misapplied the law of self-defense, we review that issue de novo. *See State v. Williams*, 1st Dist. Hamilton No. C-190380, 2020-Ohio-5245, ¶ 5 ("We review de novo whether the trial court applied the proper legal standard"). The underlying matter was tried to the bench. "Unlike a jury, which must be instructed on the applicable law, a trial court judge is presumed to know the applicable law and apply it accordingly." *State v. Turner*, 11th Dist. Ashtabula No. 2004-A-0005, 2004-Ohio-5632, ¶ 15. Although the trial court did not specifically address self-defense in rendering its verdict, "[a]n appellate court reviewing a lower court's judgment indulges in a presumption of regularity of the proceedings below." *Hartt v. Munobe*, 67 Ohio St.3d 3, 7, 615 N.E.2d 617 (1993). Mr. George has failed to point to anything in the record that affirmatively demonstrates the trial court misapplied the applicable law.

9

Case No. 2023-P-0087

{¶40} To the extent Mr. George is arguing that the state failed to disprove self-defense beyond a reasonable doubt, we apply the manifest-weight-of-the-evidence standard of review. *See Messenger*, 2022-Ohio-4562, at ¶ 26 ("[A] manifest-weight-of-the-evidence standard of review applies to the state's burden of persuasion").

{¶41} "[W]eight of the evidence addresses the evidence's effect of inducing belief." *State v. Wilson*, 113 Ohio St.3d 382, 2007-Ohio-2202, 865 N.E.2d 1264, ¶ 25. "In other words, a reviewing court asks whose evidence is more persuasive—the state's or the defendant's?" *Id*. "'The court, reviewing the entire record, weighs the evidence and all reasonable inferences, considers the credibility of witnesses and determines whether in resolving conflicts in the evidence, the [factfinder] clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered.'" *State v. Thompkins*, 78 Ohio St.3d 380, 387, 678 N.E.2d 541 (1997), quoting *State v. Martin*, 20 Ohio App.3d 172, 175, 485 N.E.2d 717 (1st Dist.1983). "When a court of appeals reverses a judgment of a trial court on the basis that the verdict is against the weight of the evidence, the appellate court sits as a 'thirteenth juror' and disagrees with the factfinder's resolution of the conflicting testimony." *Id.*, quoting *Tibbs v. Florida*, 457 U.S. 31, 42, 102 S.Ct. 2211, 72 L.Ed.2d 652 (1982). "'The discretionary power to grant a new trial should be exercised only in the exceptional case in which the evidence weighs heavily against the conviction.'" *Id.*, quoting *Martin* at 175.

{¶42} Mr. George's argument is predicated on D.C. not being a credible witness. However, when assessing witness credibility, "[t]he choice between credible witnesses and their conflicting testimony rests solely with the finder of fact and an appellate court may not substitute its own judgment for that of the finder of fact." *State v. Awan*, 22 Ohio St.3d 120, 123, 489 N.E.2d 277 (1986). This is because the trier of fact is in the best

10

position to "observe and evaluate the demeanor, voice inflection, and gestures of the witnesses." *State v. Dach*, 11th Dist. Trumbull Nos. 2005-T-0048 and 2005-T-0054, 2006-Ohio-3428, ¶ 42. "A fact finder is free to believe all, some, or none of the testimony of each witness appearing before it." *State v. Fetty*, 11th Dist. Portage No. 2011-P-0091, 2012-Ohio-6127, ¶ 58.

{¶43} Despite Mr. George's attempts to characterize the incident as one in which he was defending himself from D.C., the trial court chose to believe D.C.'s testimony that Mr. George suddenly punched her in the face while she was holding their infant child. Upon review, we cannot say the trial court clearly lost its way and created such a manifest miscarriage of justice that Mr. George's conviction must be reversed. Accordingly, Mr. George's conviction is not against the manifest weight of the evidence.

{¶44} Mr. George's second assignment of error is without merit.

### Other-Acts Evidence

{¶45} In his third assignment of error, Mr. George contends the trial court erred by admitting other-acts evidence. Specifically, Mr. George objects to D.C.'s statements during her testimony that Mr. George had previously choked her and that her adult son told the officers it was not the "first time" Mr. George had "put his hands on" D.C.

{¶46} Evid.R. 404(B)(1) provides, "Evidence of any other crime, wrong, or act is not admissible to prove a person's character in order to show that on a particular occasion the person acted in accordance with the character." "This type of evidence is commonly referred to as 'propensity evidence' because its purpose is to demonstrate that the accused has a propensity or proclivity to commit the crime in question." *State v. Hartman*, 161 Ohio St.3d 214, 2020-Ohio-4440, 161 N.E.3d 651, ¶ 21.

11

Case No. 2023-P-0087

{¶47} Evid.R. 404(B)(2) *does* allow evidence of the defendant's other crimes, wrongs, or acts to be admitted "for another purpose, such as proving motive, opportunity, intent, preparation, plan, knowledge, identity, absence of mistake, or lack of accident," provided the proponent provides advance reasonable notice and articulates the permitted purpose. "The key is that the evidence must prove something other than the defendant's disposition to commit certain acts. Thus, while evidence showing the defendant's character or propensity to commit crimes or acts is forbidden, evidence of other acts is admissible when the evidence is probative of a separate, nonpropensity-based issue." *Hartman* at ¶ 22.

{¶48} "The admissibility of other-acts evidence pursuant to Evid.R. 404(B) is a question of law." *Id.* A trial court "is precluded from admitting improper character evidence under Evid.R. 404(B), but it has discretion to allow other-acts evidence that is admissible for a permissible purpose." *State v. Graham*, 164 Ohio St.3d 187, 2020-Ohio-6700, 172 N.E.3d 841, ¶ 72.

{¶49} The Supreme Court of Ohio has set forth a three-part analysis for determining the admissibility of other-acts evidence. To be admissible, "(1) the evidence must be relevant, Evid.R. 401, (2) the evidence cannot be presented to prove a person's character to show conduct in conformity therewith but must instead be presented for a legitimate other purpose, Evid.R. 404(B), and (3) the probative value of the evidence cannot be substantially outweighed by the danger of unfair prejudice, Evid.R. 403." *Id.* When the defendant fails to object to the admission of other-acts evidence, however, this court reviews only for plain error. *See id.* at ¶ 64.

{¶50} The transcript indicates that D.C. volunteered the other-acts testimony during her direction examination. The state did not provide notice of an intent to use

12

other-acts testimony, and D.C.'s claims were not responsive to the state's questions. In fact, the transcript indicates Mr. George volunteered similar other-acts allegations against D.C. during his direct testimony.

{¶51} Even assuming D.C.'s other-acts testimony was improper, Mr. George has not established plain error. The Supreme Court of Ohio has held that in a bench trial, the trial judge "is presumed to consider only the relevant material and competent evidence in arriving at a judgment unless the contrary affirmatively appears from the record." *State v. Eubank*, 60 Ohio St.2d 183, 187, 398 N.E.2d 567 (1979). *See State v. Murray*, 8th Dist. Cuyahoga No. 91268, 2009-Ohio-2580, ¶ 25 ("concern that other acts evidence will be improperly considered by the trier of fact does not exist in a bench trial"). Mr. George has not pointed to anything in the record that affirmatively demonstrates the trial court considered D.C.'s other-acts testimony in reaching its guilty verdict.

{¶52} Mr. George's third assignment of error is without merit.

## Ineffective Assistance of Counsel

{¶53} In his fourth and final assignment of error, Mr. George contends he received ineffective assistance of trial counsel.

{¶54} "A convicted defendant's claim that counsel's assistance was so defective as to require reversal of a conviction * * * has two components. First, the defendant must show that counsel's performance was deficient." *Strickland v. Washington*, 466 U.S. 668, 687, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). "Second, the defendant must show that the deficient performance prejudiced the defense." *Id.* "The defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id.* at 694.

13

{¶55} Mr. George contends that his counsel was ineffective for failing to request the body camera footage and the 911 recording during pretrial proceedings. As explained above, however, it is unknown whether such evidence actually existed. Thus, Mr. George has necessarily failed to demonstrate that trial counsel performed deficiently by failing to request it or resulting prejudice. Accordingly, Mr. George has not established ineffective assistance of trial counsel.

{¶56} Mr. George's fourth assignment of error is without merit.

{¶57} For the foregoing reasons, the judgment of the Portage County Municipal Court, Ravenna Division, is affirmed.

JOHN J. EKLUND, J.,

ROBERT J. PATTON, J.,

concur.

14