[Cite as *In re G.T.*, 2025-Ohio-3253.]

# IN THE COURT OF APPEALS
# FIRST APPELLATE DISTRICT OF OHIO
# HAMILTON COUNTY, OHIO

| | | | |
|---|---|---|---|
| IN RE: G.T. | : | APPEAL NOS. | C-240546 |
| | | | C-240547 |
| | : | TRIAL NOS. | 23/492-01 |
| | | | 24/508-01 |
| | : | | |
| | : | | *JUDGMENT ENTRY* |
| | : | | |

This cause was heard upon the appeals, the record, the briefs, and arguments.

For the reasons set forth in the Opinion filed this date, the judgment of the trial court is affirmed.

Further, the court holds that there were reasonable grounds for these appeals, allows no penalty, and orders that costs be taxed under App.R. 24.

The court further orders that (1) a copy of this Judgment with a copy of the Opinion attached constitutes the mandate, and (2) the mandate be sent to the trial court for execution under App.R. 27.

**To the clerk:**

**Enter upon the journal of the court on 9/10/2025 per order of the court.**

**By:**_____
        **Administrative Judge**

[Cite as *In re G.T.*, 2025-Ohio-3253.]

# IN THE COURT OF APPEALS
# FIRST APPELLATE DISTRICT OF OHIO
# HAMILTON COUNTY, OHIO

| | | | |
|---|---|---|---|
| IN RE: G.T. | : | APPEAL NOS. | C-240546 |
| | | | C-240547 |
| | : | TRIAL NOS. | 23/492-01 |
| | | | 24/508-01 |
| | : | | |
| | : | | *O P I N I O N* |
| | : | | |

Appeal From: Hamilton County Court Juvenile Court

Judgment Appealed From Is: Affirmed

Date of Judgment Entry on Appeal: September 10, 2025

*Connie Pillich*, Hamilton County Prosecuting Attorney, and *Norbert Wessels* and Scott Heenan, Assistant Prosecuting Attorneys, for Plaintiff-Appellee, State of Ohio

Office of the Ohio Public Defender, and *Faith M.R. Edwards*, Assistant Public Defender, for Defendant-Appellant G.T.

**NESTOR, Judge.**

**{¶1}** After minor child, G.T., entered pleas of "admit" to two offenses that would be felonies if committed by an adult, the juvenile court committed him to the Ohio Department of Youth Services ("DYS"). G.T. argues that the juvenile court should have imposed a disposition involving probation in another state. He now appeals, asserting a sole assignment of error. Because the juvenile court properly entered a dispositional order committing G.T. to DYS, we overrule his sole assignment of error and affirm the court's judgment.

## I. Factual and Procedural History

**{¶2}** On February 21, 2023, G.T. was charged with an offense that would be aggravated burglary in violation of R.C. 2911.11 if committed by an adult, along with firearm specifications. He subsequently entered a plea of admit to the charge, but his mother filed an objection arguing that G.T. did not understand the implications of his plea due to his history of brain trauma. On October 3, 2023, the juvenile court ordered a competency evaluation per defense counsel's request.

**{¶3}** Following the evaluation, the juvenile court deemed G.T. incompetent but restorable and adopted a restoration plan. Months later, on January 23, 2024, the court determined that G.T. was competent to stand trial.

**{¶4}** On March 7, 2024, G.T. was charged with another offense that would be a felony if committed by an adult, felonious assault in violation of R.C. 2903.11. The charge was based on a fight that took place while G.T. was in custody at Hamilton County's Youth Detention Center at 2020 Auburn Avenue ("2020"). While he had entered a plea of admit to the robbery charge, he withdrew that plea upon agreement of the parties and entered a plea of admit to both the robbery charge and the felonious-assault charge on June 27, 2024. The court held a dispositional hearing on August 26,

2024. Both the guardian ad litem ("GAL") and G.T.'s mother suggested that probation near family who resided out of state would be in his best interest. The State requested that G.T. be sent to the Ohio Department of Youth Services ("DYS").

**{¶5}** At the dispositional hearing, the family expressed concerns with the medical care G.T. received at 2020 and asserted they made many attempts to get him proper care, to no avail. The family explained that G.T. previously sustained a traumatic brain injury in a car accident and lost a portion of his frontal lobe. He required many interventions due to this injury, including MRIs and numerous medicines. The family argues that 2020 did not provide G.T. with the medication he needed and, as a result, he acquired the felonious-assault charge while awaiting trial on the robbery charge at 2020.

**{¶6}** In entering its disposition, the juvenile court stated that it believed "there [were] only two options available for G.T. at this time, either probation out of state through interstate compact or DYS." Also, in addressing the family's medical-care concerns, the court explained that, regardless of what had happened at 2020, there was nothing currently suggesting that 2020 was not capable of providing G.T. with proper care. The GAL testified that, to her knowledge, at least by the time of the hearing, G.T.'s needs were being met, and 2020 was actively following the instructions from G.T.'s providers at Cincinnati Children's Hospital.

**{¶7}** The juvenile court ultimately found that G.T.'s residence in the home or return to the home would be contrary to his best interest and welfare. The court highlighted the fact that a number of reasonable efforts were made to find alternatives to DYS, most of them while G.T. was at 2020, and the court believed that the only viable option was commitment to DYS. The court ordered G.T. to be committed to DYS for a period of two years and afforded credit for 549 days held in confinement.

## II. Analysis

{¶8}   In his sole assignment of error, G.T. asserts that the juvenile court erred when it failed to accept the recommendations of his medical experts, defense counsel, the GAL, and court probation, and ordered him committed to DYS.  G.T. asserts that the court based its disposition on an incorrect statement of the court's dispositional options under R.C. 2152.19.

{¶9}   For ease of discussion, we will first address the court's alleged incorrect statement of the law.  G.T. takes issue with the court's statement that it had only two choices for disposition, with "no in-between."  While this statement certainly appears to conflict with the many dispositional options available under R.C. 2152.19 when viewed in isolation, the statement must be considered in the context of the dispositional hearing.

{¶10}   The court first heard argument from G.T.'s counsel that throughout his almost two-year confinement, G.T.'s behavior had continuously improved.  Defense counsel acknowledged the fact that the physical alteration at 2020 had taken place, but counsel strongly opined that the assault occurred because G.T. was not properly medicated.  As for his dispositional placement, relying on Dr. Ann Bradley's report and on Dr. Paul Deardorff's recommendation, G.T.'s counsel requested probation or an outpatient treatment program rather than placement at DYS.  Dr. Bradley conducted a neuropsychological evaluation on G.T., while Dr. Deardorff conducted the psychological evaluation ordered by court.  Both reports were available for the juvenile court's review.  Also, regardless of the disposition imposed, his counsel wanted G.T. to continue treatment at Children's Hospital.

{¶11}   G.T.'s counsel expressed concern that G.T. would not get proper medical care as a minor with a severe head injury if committed to DYS.  This fear mirrored the

family's concern throughout G.T.'s tenure at 2020.

{¶12} On the other hand, G.T.'s probation officer, Mr. Pflum, opined that only two options existed for G.T., namely, a residential treatment program or DYS. The officer stated that residential programs had been attempted but G.T. was denied due to G.T.'s "progression." The State asserted that G.T. was denied because of his medical condition and because of the assault at 2020. Pflum recommended either out-of-state probation or, if the court believed more intensive supervision was needed, DYS.

{¶13} The State argued for commitment to DYS. The State brought to the court's attention G.T.'s psychological evaluation completed by Dr. Deardorff, which highlighted that he had significant emotional issues and ongoing criminological thought processes. Moreover, the State contended that G.T. showed a clear need for a residential placement to address his medical issues and rehabilitation. As the State put it, G.T. needed to learn how to curb his behaviors and a nonresidential probation put both G.T. and the community at risk.

{¶14} After hearing arguments, the juvenile court sided with the State. The court recognized this was a difficult case but concluded it had been given two clear options: either probation out of state, or DYS. In part, its conclusion was based on the lack of outpatient alternatives for G.T. The court found that G.T.'s continued residence in the home or return to the home would be contrary to his best interest and welfare. As the court stated, "[A] number of reasonable efforts were made, [and] most of them were made while [G.T. was] being held at 2020[,]" but the court believed there was no in-patient alternative to commitment at DYS.

{¶15} There is nothing present in the record to indicate that the court improperly applied the law. The court did not state that the two options were the only dispositional options available for any child adjudicated delinquent; rather, it simply

6

indicated that those were the viable options for G.T. The court was only speaking as to this case and not every case. Importantly, appellate courts, when reviewing a bench trial, "may presume regularity of the proceedings where the record contains no substantiation that the trial court applied the wrong standard." *State v. Williams*, 2020-Ohio-5245, ¶ 10 (1st Dist.), citing *State v. Wright*, 2001-Ohio-2124, ¶ 4 (3d Dist.). Here, other than G.T.'s arguments that the court applied the wrong standard, we find no reason to diverge from this presumption of regularity. The record discloses that the juvenile court considered all of the evidence before it, including two expert evaluations, narrowed G.T.'s viable options to probation or DYS, and chose what it deemed best to serve his specific needs. We conclude that the court did not base its decision on an incorrect statement of the law.

{¶16} The remaining issue is whether the court abused its discretion in committing G.T. to DYS. Appellate courts review "a juvenile court's disposition for a child adjudicated delinquent under an [abuse-of-discretion] standard." *In re L.R.*, 2020-Ohio-2990, ¶ 7 (3d Dist.), citing *In re D.S.*, 2006-Ohio-5851, ¶ 6. An abuse of discretion occurs when a court exercises its judgment, in an unwarranted way, with respect to a matter over which it has discretionary authority. *Johnson v. Abdullah*, 2021-Ohio-3304, ¶ 35.

{¶17} In accordance with R.C. 2152.19(A)(4), juvenile courts have "broad discretion to craft an appropriate disposition for a child adjudicated delinquent." *In re D.S.* at ¶ 6. The court may place a child who is adjudicated delinquent on community control with attendant sanctions, services, and conditions. *Id.* Still, this discretion is not without bounds. According to R.C. 2152.01(B), dispositions must be "reasonably calculated[] to achieve certain statutory purposes." *Id.* Such purposes include "to provide for the care, protection, and mental and physical development of

children subject to this chapter, protect the public interest and safety, hold the offender accountable for the offender's actions, restore the victim, and rehabilitate the offender." *Id.*, quoting R.C. 2152.01(A). "Accordingly, a juvenile court must consider those purposes in determining which conditions of probation to impose in crafting a community-control sanction." *Id.* Furthermore, unless there is an abuse of discretion, the court's disposition will be upheld. *Id.*

**{¶18}** G.T. asserts that the court "overlooked and disregarded" the shared recommendation offered by court probation and the GAL and reinforced by his family. However, G.T. cites nothing in the record to show that choosing commitment to DYS was an abuse of discretion.

**{¶19}** R.C. 2152.19(A) begins, "[i]f a child is adjudicated a delinquent child, *the court may make any of the following orders of disposition. . .*" (Emphasis added.) The statute then enumerates six dispositional alternatives, including residential placement and DYS commitment. *See* R.C. 2152.19(A). The permissive language of the statute allows a court to employ any of the alternatives. G.T. provides no support for the proposition that a commitment to DYS constitutes an abuse of discretion when other alternatives were recommended. If the legislature wanted DYS to be the option of last resort after all other options were exhausted, it could have drafted the statute to reflect as much.

**{¶20}** Here, the juvenile court heard arguments at the dispositional hearing that G.T. (1) suffered from a traumatic brain injury, (2) was in some way present when his cousin committed suicide, (3) lost his father to gun violence, (4) was shot a number of times while in a car with his cousins, and (5) continued to receive threats from his family members to the point where his mother relocated him. All the while, G.T. has had numerous run-ins with the law and incurred serious criminal charges.

**{¶21}** Acknowledging all of the evidence before the juvenile court, it is difficult to dispute that DYS was reasonably positioned to provide for the care, protection, and mental and physical development of G.T., while also holding him accountable and protecting the public. As our sister districts have held, it is not an abuse of discretion for the juvenile court to commit a youth to DYS simply because other, less restrictive sanctions are available. *See, e.g., In re J.P.*, 2009-Ohio-3974, ¶ 13 (9th Dist.) (holding that the court did not abuse its discretion in committing a child to DYS in lieu of less restrictive dispositions).

**{¶22}** Furthermore, the juvenile court was advised that G.T. was rejected from available alternative residential options, specifically because of his history. DYS was an option—the only viable option, in the juvenile court's estimation—suitable to fit G.T.'s particular needs. We hold that the court's decision to commit G.T. to DYS was not an abuse of discretion.

**{¶23}** G.T.'s sole assignment of error is overruled.

### *III. Conclusion*

**{¶24}** The juvenile court did not base its decision on an incorrect statement of the law, nor did the court abuse its discretion in electing to order G.T. to be committed to DYS over probation in another state. We therefore affirm the judgment of the juvenile court.

Judgment affirmed.

**ZAYAS, P.J.,** and **CROUSE, J.,** concur.

9