[Cite as *In re E.J.*, 2024-Ohio-2421.]

# IN THE COURT OF APPEALS
## FIRST APPELLATE DISTRICT OF OHIO
## HAMILTON COUNTY, OHIO

| | | |
|---|---|---|
| IN RE: E.J. | : | APPEAL NO. C-240171 |
| | | TRIAL NO. F20-455Z |
| | : | |
| | : | *O P I N I O N.* |

Appeal From: Hamilton County Juvenile Court

Judgment Appealed From Is: Reversed and Cause Remanded

Date of Judgment Entry on Appeal: June 26, 2024

*Christopher P. Kapsal,* for Appellant Mother,

*Melissa A. Powers*, Hamilton County Prosecuting Attorney, and *Daniel Monk*, Assistant Prosecuting Attorney, for Appellee the Hamilton County Department of Job and Family Services,

*Raymond T. Faller*, Hamilton County Public Defender, and *Megan E. Busam*, Assistant Public Defender, for the Guardian ad Litem for the minor child.

**BOCK, Presiding Judge.**

{¶1}   Appellant Mother appeals from the juvenile court's grant of permanent custody of her son E.J. to the Hamilton County Department of Job and Family Services ("HCJFS"). Mother asserts that the juvenile court improperly placed the burden of proof on her and failed to conduct an independent review of the magistrate's decision. She also asserts that the juvenile court's decision is supported by insufficient evidence and against the manifest weight of the evidence.

{¶2}   Because the juvenile court repeatedly cited an appellate standard of review and determined that the magistrate did not abuse his discretion when discussing the merits of Mother's objections, we hold that the juvenile court failed to conduct an independent review of the record. Further, we hold that the juvenile court erred by adopting the magistrate's decision without modifying the portions of the magistrate's decision that shifted the burden of proof to Mother. We reverse the juvenile court's judgment and remand the cause for the juvenile court to independently review the record and to consider whether HCJFS met its clear-and-convincing burden of proof.

## I.   Facts and Procedure

### a.   Procedural History

{¶3}   This parental-termination case began in April 2020, when HCJFS obtained an ex parte emergency order for custody of Mother's infant son E.J. The next day, HCJFS moved for temporary custody of E.J.—the court granted that motion. The juvenile court adjudicated E.J. dependent in August 2020 and placed him into HCJFS's temporary custody.

{¶4} In March 2022, HCJFS moved for permanent custody of E.J. The magistrate issued a decision granting HCJFS's permanent-custody motion, to which Mother objected. The juvenile court overruled Mother's objections and adopted the magistrate's decision, finding that the magistrate "properly determined the factual issues and appropriately applied the law." It granted permanent custody of E.J. to HCJFS. Mother appeals.

**b. Facts**

{¶5} Mother gave birth to E.J. in August 2018. (His father is unknown.) Mother has struggled with substance-abuse issues for most of her life—her parents gave her drugs when she was only seven years old. Mother went into the foster-care system after her parents died from drug-related complications. She testified that she stopped using drugs when she was six-weeks pregnant with E.J. and remained off drugs for around 15 months while living at a residential drug-treatment facility. But following the onset of the COVID-19 pandemic, her substance-abuse meetings were shut down and Mother relapsed in April 2020, which is when HCJFS moved for emergency custody of E.J.

{¶6} HCJFS placed E.J. with a foster family, where he has lived during the entirety of this case. E.J.'s foster mother testified that E.J. is bonded with her, E.J.'s foster father, and their extended family. E.J.'s foster mother stated that E.J. has referred to her as "Mom" "almost since he first came to us." E.J.'s foster family would like to adopt him.

{¶7} E.J.'s foster mother testified that when E.J. came into her care, he was unable to cry or express negative emotions. The foster parents placed E.J. in therapy. E.J.'s foster mother takes him to his therapy sessions—Mother has not attended any

3

of his sessions. Recently, however, E.J. changed therapists and his new therapist's schedule could not accommodate Mother's visitation times. Mother stated that she supported E.J.'s participation in therapy and wanted him to continue being in therapy. When asked if she had investigated potential therapy providers, Mother responded, "Yeah Mahajan's"—Mahajan Therapeutic ("Mahajan") was the mental-health provider Mother was using at the time of the hearing. Despite this testimony, the magistrate's decision stated that Mother had not "explored or presented options for mental health treatment and services for E.J."

{¶8}  The magistrate found that Mother had participated in five substance-abuse treatment programs but failed to complete any of those programs. Mother testified that she had engaged in "six or seven" different drug-treatment programs over five years. Before the case began, Mother completed treatment at a residential treatment center. Then, following her relapse in April 2020, Mother received both drug treatment and mental-health treatment at Brightview. Once Brightview stopped providing mental-health treatment, Mother was referred to Talbert House. Mother left Talbert House shortly after starting there and began treatment at Woodhaven Residential Treatment Center in May 2022 ("Woodhaven"), but she was discharged from Woodhaven in July 2022 because, according to a caseworker, Mother exhibited hallucinations and aggressive behavior. Mother then began treatment at Cardinal Treatment Facility ("Cardinal") in Ironton, Ohio, in August 2022.

{¶9}  Mother experienced mental-health issues during the pendency of the case. She had two psychiatric hospital admissions at the University of Cincinnati Medical Center ("UC Medical Center"). In November 2021, Mother presented at UC Medical Center's emergency room due to a mental-health episode in which she showed

signs of paranoia and psychosis. Medical providers prescribed Mother lithium and Zyprexa and referred her to Talbert House at discharge, but she did not follow up with Talbert House or take the prescribed medication. Mother was readmitted to UC Medical Center in January 2022 again due to paranoia and psychosis. HCJFS filed its motion for permanent custody shortly after Mother's second admission.

{¶10} Mother left Cincinnati and moved in with her stepmother in Chesapeake, Ohio, in April 2022. She entered an in-patient drug-treatment program at Woodhaven. HCJFS conducted a home study of her stepmother's home, which was unsuccessful.

{¶11} Mother went "missing for eight months" from May 2022 through February 2023. She did not visit or see E.J. during this period. Mother requested that visitation resume in October 2022, and in February 2023, Mother resumed supervised visitation. Mother's caseworker testified that the visits went well, that Mother acted appropriately with E.J., and that E.J. was always excited to see Mother.

{¶12} E.J.'s foster mother and Mother's caseworker testified that Mother's visits and absences increased E.J.'s anxiety. E.J.'s foster mother testified that E.J. would get very excited and anxious before Mother's visits and that E.J. experienced an increase in nightmares when Mother's visits resumed in February 2023. Mother's caseworker testified that E.J.'s anxiety was related to uncertainty about whether visits with Mother would continue or if Mother would leave again.

{¶13} At the time of the hearing, Mother was living at Cardinal. Mother had successfully completed an in-patient program and was in Cardinal's "transitional" program in which she lived in independent housing and paid $200 a month in rent. She participated in alcohol and drug ("AOD") counseling at Cardinal and received

mental-health treatment at Mahajan. Amber Fitzpatrick, Mother's AOD counselor at Cardinal, testified that Mother had been receiving treatment at Cardinal for 15 months and that Mother's participation in the program was "100 percent." Fitzpatrick stated that Mother had been her most successful client. Mother had passed multiple random drug screens. Additionally, Mother obtained employment at a local restaurant through Cardinal, worked 40-50 hours a week, and had recently been promoted.

{¶14}  Fitzpatrick testified that children were permitted to live in transitional housing at Cardinal, but no child had ever done so. The transitional-housing program provided houses for four or fewer individuals who had completed the in-patient program at Cardinal. Fitzpatrick testified that if Mother relapsed while in transitional housing, she would be removed from the transitional housing and given the option of either going back to in-patient housing—where children were not permitted—or leave the program entirely. Mother stated that she was staying in transitional housing to save money but did not provide a timeline for when she planned to move out.

{¶15} Mother testified that she was receiving mental-health treatment at Mahajan and that her Mahajan treatment providers determined that Mother had been misdiagnosed and improperly prescribed Depakote, which contributed to her mental-health episodes and hospital admissions in 2021 and 2022. Her providers at Mahajan did not testify and Mother did not submit any of her medical records. Mother explained that she was taking four medications, three of which were for her mental health.

## II. Law and Analysis

### a. The juvenile court did not independently review the record

{¶16}  In her first assignment of error, Mother argues that the juvenile court abused its discretion by failing to review de novo the magistrate's decision following Mother's objections.

### 1. Standard of review

{¶17}  Appellate courts generally review juvenile courts' parental-termination determinations under a sufficiency-of-the-evidence or a manifest-weight-of-the-evidence standard of review. *In re Z.C.*, 173 Ohio St.3d 359, 2023-Ohio-4703, 230 N.E.3d 1123, ¶ 11. But when an appeal of a parental-termination decision presents questions of law, our review is de novo. *In re L.E.S.*, 2024-Ohio-165, 233 N.E.3d 1259, ¶ 14 (1st Dist.). Whether the trial court applied the appropriate legal standard is a legal question that we review de novo. *See State v. Williams*, 1st Dist. Hamilton No. C-190380, 2020-Ohio-5245, ¶ 5 ("We review de novo whether the trial court applied the proper legal standard.")

### 2. Objections to a magistrate's decision under Juv.R. 40

{¶18}  Juv.R. 40 mandates that upon a timely objection to a magistrate's decision, the juvenile court must "undertake an independent review as to the objected matters to ascertain that the magistrate has properly determined the factual issues and appropriately applied the law." Juv.R. 40(D)(4)(d). Juvenile courts must review the facts and determine the issues de novo. *In re Y.H.*, 1st Dist. Hamilton No. C-230132, 2023-Ohio-2272, ¶ 32, citing *In re A.S.*, 1st Dist. Hamilton No. C-180056, 2019-Ohio-2359, ¶ 20. Accordingly, juvenile courts may not defer to the magistrate. *In re J.P.*, 10th Dist. Franklin No. 16AP-61, 2016-Ohio-7574, ¶ 21.

{¶19} This court presumes that the juvenile court complied with Juv.R. 40(D)(4)(d) when the record demonstrates that the juvenile court independently reviewed the evidence, acknowledged the applicable statutes, and reached its conclusions based on clear and convincing evidence. *In re A.M.*, 166 Ohio St.3d 127, 2020-Ohio-5102, 184 N.E.3d 1, ¶ 40.

{¶20} But a juvenile court reviewing a magistrate's decision for an abuse of discretion constitutes error. *Jones v. Smith*, 187 Ohio App.3d 145, 2010-Ohio-131, 931 N.E.2d 592, ¶ 13 (4th Dist.). Magistrates are not independent officers of the court; rather, they are subordinate officers of the trial court. *In re J.P.* at ¶ 21. As such, juvenile courts should not presume a magistrate's decision's validity. *Jones* at ¶ 13.

{¶21} In *Jones*, the Fourth District held that the juvenile court erred in adopting the magistrate's decision where the trial court's entry stated, "The Court finds the Magistrate properly considered the issues before the Court and rendered a decision, which did not indicate an abuse of discretion. The Magistrate's Decision was not unreasonable, unconscionable, or arbitrary as the focus on the decision was based upon the best interest of the child." *Jones* at ¶ 8. The *Jones* court could not conclude that the trial court independently reviewed the issues without deferring to the magistrate. It therefore reversed the trial court's judgment and remanded the cause to allow the juvenile court to independently review the objections. *Id.* at ¶ 15.

{¶22} In *In re J.P.*, the Tenth District similarly found that the juvenile court erred where its entry overruling objections to the magistrate's entry contained "numerous instances where the juvenile court unequivocally applied an appellate standard of review." *In re J.P.*, 10th Dist. Franklin No. 16AP-61, 2016-Ohio-7574, at ¶ 24. The court distinguished its prior cases in which it had determined that the juvenile

court's statements that the magistrate had not abused his discretion merely reflected the juvenile court's "concurrence" with the magistrate rather than the juvenile court's "deference" to the magistrate. *Id.* at ¶ 16, 24, citing *In re H.D.D.*, 10th Dist. Franklin Nos. 12AP-134, 12AP-135, 12AP-136, 12AP-137, 12AP-146, 12AP-147, 12AP-148 and 12AP-149, 2012-Ohio-6160, ¶ 94. While the juvenile court's entry initially acknowledged the requirement for an independent review, the juvenile court's repeated references to an appellate standard of review rendered the decision "at best, ambiguous with regard to the standard of review" and prevented the appellate court from "affirmatively determin[ing] whether the court conducted an independent review as required by Juv.R. 40 and Civ.R. 53." *Id.* at ¶ 31-32. The appellate court reversed the juvenile court's judgment and remanded the cause for the juvenile court to apply the correct standard to the objections to the magistrate's decision. *Id.* at ¶ 33.

{¶23} Here, the juvenile court initially noted the correct requirement for independent review. But following its recitation of the independent-review requirement, the juvenile court framed Mother's objection to the magistrate's weighing of the best-interest factors as a "manifest weight argument" and reviewed the magistrate's decision for an abuse of discretion. The juvenile court further stated, "Judgments supported by some competent, credible evidence going to all the essential elements of the case will not be reversed by a reviewing court as being against the manifest weight of the evidence." The juvenile court also explained that, in making a custody determination, the magistrate must consider the factors set out in R.C. 3109.04(F), rather than R.C. 2151.414(D). The court again described Mother's argument as a manifest-weight challenge and set out the abuse-of-discretion standard.

9

{¶24} The guardian ad litem ("GAL") asserts the juvenile court did not fail to independently review the record but instead addressed the argument raised in Mother's objections. The GAL argues that "abuse of discretion and weight of the evidence * * * are not exclusively appellate in nature and are regularly raised on objection, as is the case here." While in her objections Mother stated that the magistrate's decision "was contrary to the manifest weight of the proceedings," Mother's full objection stated, "The issue in this Case is whether the State met their burden and if the Court properly weighed the evidence in finding Termination of Parental Rights was proper and in the best interest of the child." Mother specifically cited law explaining that the juvenile court must conduct an independent review. She never argued that the magistrate abused his discretion. Therefore, while Mother's objection generally asserted the magistrate improperly weighed the best-interest factors, the GAL is incorrect in stating that the juvenile court responded to Mother's raising a manifest-weight challenge.

{¶25} We cannot determine whether the juvenile court independently reviewed the magistrate's decision when it overruled Mother's objections. While the juvenile court started and ended its decision with a boiler-plate recitation of the correct standard, its substantive discussion of Mother's objections exclusively referenced an appellate standard of review. The court additionally cited the wrong statute in its entry.

{¶26} We sustain Mother's first assignment of error, reverse the juvenile court's judgment, and remand the case for the juvenile court to conduct an independent review of the magistrate's decision.

#### b. The juvenile court improperly shifted the burden of proof to Mother

{**¶27**}  In her second assignment of error, Mother argues that the magistrate improperly placed the burden of proof on her and that the trial court improperly adopted the magistrate's decision without correcting this error.

### 1. Burden of proof in a permanent-custody proceeding

{**¶28**}  Before a juvenile court may grant a motion for permanent custody of a child, it must find by clear and convincing evidence that (1) granting permanent custody to the agency is in the child's best interest, and (2) any one of the R.C. 2151.414(B)(1)(a)-(e) factors apply. R.C. 2151.414(B)(1). The agency moving for permanent custody bears the burden of proving that permanent custody is in the child's best interest. *In re B.C.*, 141 Ohio St.3d 55, 2014-Ohio-4558, 21 N.E.3d 308, ¶ 26. The agency's burden of proving its case by clear and convincing evidence is constitutionally mandated. *Santosky v. Kramer*, 455 U.S. 745, 747-748, 102 S.Ct. 1388, 71 L.Ed.2d 599 (1982) ("Before a State may sever completely and irrevocably the rights of parents in their natural child, due process requires that the State support its allegations by at least clear and convincing evidence.").

{**¶29**}  Clear and convincing evidence is evidence that " 'produce[s] in the mind of the trier of facts a firm belief or conviction as to the facts sought to be established.' " *In re Adoption of Holcomb*, 18 Ohio St.3d 361, 368, 481 N.E.2d 613 (1985), quoting *Cross v. Ledford*, 161 Ohio St. 469, 477, 120 N.E.2d 118 (1954). If the moving party meets its clear-and-convincing burden, the nonmoving party must produce evidence that renders the movant's evidence less than clear and convincing. *In re Gordon*, 3d Dist. Hancock Nos. 5-04-22 and 5-04-23, 2004-Ohio-5889, ¶ 11, quoting *In re Holbert*, 10th Dist. Franklin No. 83AP-704, 1984 Ohio App. LEXIS 8694, 8 (Mar. 6,

1984). The burden of persuasion remains with the agency throughout the entire proceeding. *Id.*

**{¶30}** Here, the magistrate found that Mother had not "fully corrected concerns related to her mental health." The magistrate discussed HCJFS's evidence of Mother's two hospital admissions for delusions and psychosis at UC Medical Center in November 2021 and January 2022.[1] The magistrate also noted Mother's absence from E.J.'s life from May 2022 through February 2023 during which Mother stated she was suffering from delusions and psychotic symptoms.

**{¶31}** In his decision, the magistrate stated, "Some evidence was presented through mother, which did NOT reach the level of clear and convincing evidence, and contained unverified hearsay, which will also be addressed within." (HCJFS did not object to Mother's testimony on hearsay grounds.) Later, the magistrate explained that the only evidence Mother offered as to her mental health was her own testimony, which included statements the juvenile court deemed hearsay. The magistrate found that "[t]his evidence is NOT clear and convincing, and does NOT leave this magistrate with the firm conviction in his mind that mother's mental health is no longer a danger or safety risk." The juvenile court adopted the magistrate's decision without modifying these findings.

**{¶32}** The GAL argues that, when the magistrate's decision is read in its entirety, it shows that the magistrate simply found that HCJFS met its burden by clear and convincing evidence and did not shift the burden of persuasion to Mother. We disagree. The magistrate clearly stated that Mother's evidence of her mental health

---

[1] The magistrate's decision stated that Mother's hospitalization occurred in June 2020. While Exhibit 1 does indicate that Mother presented at UC Medical Center emergency department on that date, her chart did not indicate that Mother was suffering from any mental-health issues.

was not clear and convincing. While the magistrate did find that HCJFS's evidence met the clear-and-convincing standard, he also determined that Mother failed to present clear and convincing evidence that she had corrected her mental-health concerns. The juvenile court did not correct this error and, at most, stated that "the Magistrate did not find some of Mother's testimony credible regarding her mental health."

{¶33} In sum, the magistrate misstated the law and improperly shifted the burden of proof to Mother to rebut HCJFS's case by clear and convincing evidence. Because the juvenile court adopted the magistrate's decision without correcting this error, we sustain Mother's second assignment of error.

### c. Mother's weight and sufficiency arguments are moot

{¶34} In her third assignment of error, Mother argues the trial court erred in finding that it was in E.J.'s best interest to grant HCJFS's motion for permanent custody. Mother asserts that the juvenile court's judgment was not supported by sufficient evidence and was against the manifest weight of the evidence.

{¶35} Given our disposition of Mother's first and second assignments of error, Mother's third assignment of error is moot. But we note that this case highlights how important it is for juvenile courts to independently review the record. What is in a child's best interest is a "fluid concept, as it involves the child's continually-changing need for appropriate care." *In re M.H.*, 2023-Ohio-3776, 226 N.E.3d 584, ¶ 49 (1st Dist.). A best-interest determination requires consideration of the facts as they exist at the time of the termination hearing. While the evidence suggests that Mother has struggled with mental-health and substance-abuse issues, this case is not as clear cut as many other parental-termination cases. And without the juvenile court's

independent review, we are unable to effectively perform our role as an appellate court in reviewing "the discretionary choice the trial court made when it adopted its magistrate's decision." *See Quick v. Kwiatkowski*, 2d Dist. Montgomery No. 18620, 2001-Ohio-1498.

**{¶36}** Mother's third assignment of error is moot, and we do not address it.

### III.    Conclusion

**{¶37}** For the foregoing reasons, we sustain Mother's first and second assignments of error, reverse the trial court's judgment, and remand the cause for further proceedings. Mother's third assignment of error is moot, and we do not address it.

Judgment reversed and cause remanded.

**BERGERON** and **KINSLEY JJ.,** concur.

Please note:

The court has recorded its entry on the date of the release of this opinion.