[Cite as *In re A.C.*, 2024-Ohio-5185.]

# IN THE COURT OF APPEALS
# FIRST APPELLATE DISTRICT OF OHIO
# HAMILTON COUNTY, OHIO

|  |  |  |
|---|---|---|
| IN RE: A.C.1 AND A.C.2 | : | APPEAL NO. C-240417<br>TRIAL NO. F/13/1783 Z |
|  | : |  |
|  | : | *O P I N I O N* |
|  | : |  |

Appeal From: Hamilton County Juvenile Court

Judgment Appealed From Is: Reversed and Cause Remanded

Date of Judgment Entry on Appeal: October 30, 2024

*Kimberly V. Thomas,* for Appellant Grandmother,

*Cynthia S. Daugherty,* for Appellee Mother,

*Raymond T. Faller*, Hamilton County Public Defender, and *Victoria A. Link,* Assistant Public Defender, Appellee Guardian Ad Litem for children,

*Melissa A. Powers*, Hamilton County Prosecuting Attorney, and *Janice H. Barr*, Assistant Prosecuting Attorney, for Appellee Hamilton County Department of Job and Family Services.

**BERGERON, Presiding Judge.**

{¶1} This permanent custody dispute involves a nearly five-year odyssey that includes several motions for temporary and permanent custody, two permanent custody hearings, and one previous appeal. After the dust settled, the juvenile court upheld the magistrate's decision that the children's grandmother was unfit to care for them due to her persistent failures to address serious concerns regarding her substance abuse, mental health, and income and housing instability. In its review of the grandmother's objections to the magistrate's decision, however, the juvenile court failed to apply the appropriate standard of review consistent with this court's precedent. As a result, after a comprehensive review of the record, we sustain grandmother's first assignment of error, the disposition of which renders her second assignment of error moot. Therefore, we reverse the juvenile court's judgment and remand this cause for further proceedings.

I.

{¶2} We are once again called upon to consider the juvenile court's review of a magistrate's decision upon a party's objection. In 2014, appellant grandmother Corinda Childress was awarded sole custody of her two young grandchildren, A.C.1 and A.C.2, as the result of a private custody action. Several years later, in January 2020, appellee Hamilton County Department of Job and Family Services ("HCJFS") grew concerned about the children and their living conditions, after Ms. Childress was evicted from her apartment, was sleeping in a family member's living room, had no income, and was alleged to have a substance abuse issue. Specifically, HCJFS discovered that after her eviction, Ms. Childress left one child with a family friend and left the other child with a stranger before the child went on to live with her mother in a shed with no running water, food, or electricity. In addition to her unstable housing, Ms. Childress was alleged to be abusing methamphetamines and marijuana, and was

unreachable for several days after leaving the children with other individuals. In order to address these serious concerns, HCJFS filed an emergency custody motion with the juvenile court, requesting temporary custody of the two children.

{¶3} After the court temporarily placed the children with HCJFS, Ms. Childress participated in a mental health evaluation and was diagnosed with an undefined stress and trauma disorder. In hopes to eventually reunite the children with their grandmother, HCJFS required that she participate in random drug screens and attend therapy, but she failed to follow through on these obligations. Several more motions were filed for temporary custody, which the magistrate granted, citing Ms. Childress's failure to remedy any of the concerns regarding her housing, income, substance abuse, and mental health.

{¶4} Eventually, seeing no potential resolution in sight, in November 2021, HCJFS moved for permanent custody of the children, which the magistrate granted. The magistrate explained that Ms. Childress could not verify her housing or income, nor did she address her substance abuse or mental health issues to the extent necessary to ensure that she would be fit to care for the children. Thereafter, she filed objections to the magistrate's decision, prompting the juvenile court to review the matter. However, during the hearing before the juvenile court, Ms. Childress was not represented by an attorney, but the court found that, because she had fired three previous attorneys, she waived her right to counsel, despite her request for counsel during the hearing.

{¶5} That decision prompted an appeal and the case's first appearance before this court. We reversed the juvenile court's judgment and remanded the matter to the juvenile court for a new hearing on the motion for permanent custody, holding that Ms. Childress did not waive her right to counsel and the juvenile court erred in so finding. *In re C Children*,

2023-Ohio-588, ¶ 30 (1st Dist.). That decision laid the groundwork for the second appeal in this case.

**{¶6}** Before the issue could be reheard on remand, the children's guardian ad litem ("GAL") made a motion to suspend Ms. Childress's visitation rights. In granting the motion, the magistrate noted that both children clearly communicated that they did not wish to be placed with or see their grandmother any longer. Ms. Childress believes that the foster family and others involved in this case "coached" the children to say those things because, at one point, the children told her that they wanted to continue seeing her and their biological mother. But after further inquiry, it appeared that the children voiced a desire to maintain a relationship with their grandmother simply to avoid confrontation with her.

**{¶7}** With that backdrop, the magistrate reheard the issue of permanent custody but ultimately reached the same outcome. The magistrate cited the ongoing and unaddressed concerns with Ms. Childress's unstable housing and income, her substance abuse issue, and her mental health challenges. Specifically, the magistrate pointed to the fact that she only made self-serving statements that these issues had been addressed but provided no evidence to corroborate such conclusions. Surveying the evidentiary record, the magistrate once again granted HCJFS's request for permanent custody. Ms. Childress subsequently objected to those findings, again prompting the juvenile court to review the matter.

**{¶8}** But that's where this case veers off-script. In its decision, the juvenile court indicated that it was conducting an independent review of the record, as it must by rule, but it proceeded to apply the abuse of discretion and manifest weight of the evidence standards in its short analysis of this issue before simply copying and pasting the magistrate's decision in full. Ms. Childress now appeals to this court a second time, asserting two assignments of error. First, she argues that the juvenile court failed to conduct an independent review of the

4

magistrate's factual findings and legal conclusions upon her objection, citing this court's recent decision in *In re E.J.*, 2024-Ohio-2421 (1st Dist.).  Second, she asserts that the juvenile court improperly shifted the burden to her during the permanent custody hearing.  We ultimately agree and reverse the juvenile court's judgment and remand this cause for further proceedings.[1]

I.

**{¶9}**  While the background facts are different, the procedural woes in this case track closely with those in *E.J.*  In *E.J.*, this court held that when the juvenile court "framed [Appellant's] objections . . . as a 'manifest weight argument' and reviewed the magistrate's decision for an abuse of discretion," it did so in error.  *Id.* at ¶ 23.  We ultimately found that the juvenile court's analysis applied the incorrect standard of review borrowing (and jumbling) two appellate standards of review in lieu of the independent review mandated by rule.  *Id.* at ¶ 25; *See* Juv.R. 40(D)(4)(d).  As explained below, we now reverse the juvenile court's judgment here for the same reasons that this court did in *E.J.*

**{¶10}**  Under Juv.R. 40(D)(4)(d), if a party timely objects "to a magistrate's decision . . . the court shall undertake an independent review as to the objected matters to ascertain that the magistrate [] properly determined the factual issues and appropriately applied the law."  In conducting this obligatory independent review, the juvenile court must not defer to the magistrate.  *E.J.* at ¶ 18, citing *In re J.P.*, 2016-Ohio-7574, ¶ 21 (10th Dist.).  In reviewing such a decision, "[j]uvenile courts should not presume a magistrate's decision's validity."  *Id.* at ¶

---

[1] HCJFS moved to dismiss this appeal because Ms. Childress is currently incarcerated and (it represents) will remain so until July 2025.  HCJFS asserts that because it is impossible at this point for Ms. Childress to take physical custody of the children if this court reversed this judgment and the juvenile court ruled in her favor, her appeal is moot.  While we understand and appreciate HCJFS's concerns and its argument, it failed to substantiate its claim that Ms. Childress will be incarcerated until any particular date certain.  Additionally, in light of the procedural posture of this case, Ms. Childress may very well be released by the time further proceedings take place at the juvenile court level.  For that reason, we will decide this case on the merits.  If she remains incarcerated, the parties may address that on remand.

20, citing *Jones v. Smith*, 2010-Ohio-131, ¶ 13 (4th Dist.). And this makes sense from a structural perspective—the magistrate is assisting the juvenile court in performing its job, but we must ensure that judicial officers are conducting a meaningful independent review rather than simply determining that the magistrate was close enough.

**{¶11}** Cognizant of this procedural wrinkle, HCJFS first tries to persuade us that we don't need to reach the matter, insisting that Ms. Childress lacks standing to challenge the juvenile court's decision to terminate her legal custody, or alternatively, that her challenge is reviewed under a different standard as a legal custodian, rather than a biological parent. In particular, HCJFS wants us to hold that because Ms. Childress is simply being denied legal custody, she does not have standing to challenge a grant of permanent custody. *See In re L & M Children*, 2019-Ohio-5520, ¶ 49 (1st Dist.). However, the facts of the case cited by HCJFS differ from the case before us now. In *L & M*, the grandmother and great aunt were *seeking* legal custody at the time of the proceedings and in doing so, attempted to challenge the court's grant of permanent custody to HCJFS as it pertained to the mother. *Id.* at ¶ 45-51. Here, Ms. Childress is challenging the court's grant of permanent custody to HCJFS as it pertains to her *own* rights as legal custodian, rights which were granted to her in 2014. Additionally, HCJFS notes that "[r]elatives seeking custody of a child do not have the same rights as a natural parent." *In re Patterson*, 2010-Ohio-766, ¶ 16 (1st Dist.). But again, HCJFS fails to appreciate that Ms. Childress had legal custody and those rights were being terminated.

**{¶12}** A review of the case law reveals, and HCJFS admits, that while Ms. Childress does not have standing to challenge the termination of *parental* rights, she certainly does have standing to challenge the juvenile court's decision terminating *her* rights as a legal custodian in granting permanent custody to HCJFS. *See In re E.E.D.*, 2022-Ohio-4014, ¶ 49 (8th Dist.). As a legal custodian, Ms. Childress enjoys standing to advance her own rights as

a result of the legal custodianship awarded to her in 2014. While HCJFS claims that legal custodians receive a watered-down version of the analysis, it fails to substantiate the point with any relevant case law. We accordingly turn to the crux of the inquiry.

{¶13} Typically, "[a]ppellate courts [] review juvenile courts' parental-termination determinations under a sufficiency-of-the-evidence or a manifest-weight-of-the-evidence standard of review." *E.J.*, 2024-Ohio-2421, at ¶ 17 (1st Dist.), citing *In re Z.C.*, 2023-Ohio-4703, ¶ 11. However, if an appeal of such a decision "presents questions of law, [the appellate court's] review is de novo." *Id.*, citing *In re L.E.S*, 2024-Ohio-165, ¶ 14 (1st Dist.). "Whether the trial court applied the appropriate legal standard is a legal question that we review de novo." *Id.*, citing *State v. Williams*, 2020-Ohio-5245, ¶ 5 (1st Dist.). In reviewing such a decision, the appellate court "presumes that the juvenile court complied with Juv.R. 40(D)(4)(d) when the record demonstrates that the juvenile court independently reviewed the evidence, acknowledged the applicable statutes, and reached its conclusions based on clear and convincing evidence." *Id.* at ¶ 19, citing *In re A.M.*, 2020-Ohio-5102, ¶ 40.

{¶14} In the juvenile court's decision below, it correctly indicated that its review of the magistrate's decision was "[b]ased upon an independent review of the record, the evidence presented, and the arguments submitted." That certainly incants the correct standard of review that the juvenile court must apply. But we ultimately need to consider the totality of the order, rather than a sentence in isolation, and that's where this case goes sideways. The juvenile court here inserted similar language as the court in *E.J.*, referring to several standards of review. In its brief analysis, it determined that "[i]n light of the Magistrate's thorough analysis, their consideration of the appropriate statutory factors, the Court cannot find the decision is against the manifest weight of the evidence or find any abuse of discretion . . . ." The juvenile court even inserted the legal definitions for the abuse of

discretion and manifest weight of the evidence standards of review, suggesting that this was more than a cut and paste mishap.

{¶15} And this ultimately runs afoul of what we held in *E.J.*, that a "juvenile court's repeated references to an appellate standard of review render[ed] [a] decision 'at best, ambiguous with regard to the standard of review' and prevented the appellate court from 'affirmatively determining whether the court conducted an independent review as required.'" *E.J.* at ¶ 22, quoting *J.P.*, 2016-Ohio-7574, at ¶ 31-32 (10th Dist.). The same goes here. The juvenile court's repeated references to the manifest weight of the evidence and abuse of discretion standards muddies the waters as to what standard it was actually applying in its review.

{¶16} That doesn't mean that the decision would not be salvageable if we saw convincing evidence that the juvenile court actually applied the correct standard, notwithstanding citing the wrong one. But it did not develop its analysis, electing instead to simply insert the magistrate's decision in full. This is exactly what the juvenile court in *E.J.* did as well. When a court does not discuss the best interest factors, reference the transcript, or analyze the magistrate's decision, it is difficult to determine whether it conducted an independent review. *See J.P.* at ¶ 18, quoting *Mattis v. Mattis*, 2016-Ohio-1084, ¶ 17 (10th Dist.) (the court held that such considerations led it to conclude that the juvenile court did conduct an independent review of the record and apply the correct standard). That is not to say that juvenile courts must undertake those actions in order to convince us in every case that they engaged in the appropriate review, but here, with substantial doubt as to whether the court applied the correct standard, further analysis could have alleviated our concerns. Without such, we are unable to "affirmatively determine" if the juvenile court did in fact conduct an independent review.

**{¶17}** For those reasons, we sustain Ms. Childress's first assignment of error.

II.

**{¶18}** In her second assignment of error, Ms. Childress asserts that the juvenile court improperly placed the burden of proof on her in coming to its decision. However, based on the resolution of her first assignment of error, her second assignment is moot.

\* \* \*

**{¶19}** Based on the foregoing reasons, we sustain Ms. Childress's first assignment of error, a disposition which makes her second assignment moot. We reverse the judgment of the juvenile court and remand this cause for further proceedings.

Judgment reversed and cause remanded.

**CROUSE** and **WINKLER, JJ.,** concur.

Please note:

The court has recorded its entry on the date of the release of this opinion.